EDWARD A. HODGKINS *vs.* CHARLES H. PRICE & another.

Essex.   Nov. 3, 1880; Sept. 9, 1881. — Jan. 30, 1882.   C. ALLEN, J., absent.

A. leased a parcel of land with a building thereon, of which he was the owner, to
    B.  During the term of the lease, the building was destroyed by fire, and the
    actual use and occupation of the estate were wholly abandoned by B.  A. then
    conveyed the estate to C., who erected a new building thereon and leased it to
    several tenants.  B. contended that he had a right of possession under his lease,
    and, before the erection of the new building, assigned the lease to D., who sev-
    eral years afterwards, but during the term of the lease, with the assistance of a
    large number of men, at an unseasonable hour in the morning, forcibly entered
    the building and took possession thereof, but was ejected therefrom by the
    tenants upon their arrival.  He then brought an action of forcible entry and
    detainer, under the Gen. Sts. c. 137, against C.  *Held,* that the action could not
    be maintained.

LORD, J.   This is an action of forcible entry and detainer,
under the Gen. Sts. *c.* 137.   The undisputed facts are these:

Eben N. Price owned a lot of land with a building on it
upon the corner of Essex and Washington Streets, in Salem.   In
1867 he leased that estate to one Fogg, for the term of twenty
years.   In the spring of 1875, a fire occurred in the building
which rendered it substantially untenantable.   In the summer
of that year, a controversy existed between Price, the owner
of the building, and Fogg, the lessee, as to their rights in the
building and the land under it.   The particulars of that con-
troversy it is not necessary to examine.   It is sufficient to
know that the actual use and occupation of the estate were
wholly abandoned by Fogg; that Price then conveyed the
estate to the defendants; that the defendants wholly removed
all that remained of the injured building, gave notice to the
city authorities of Salem of their intention to build, and erected
a new and different structure, claiming to be the absolute own-
ers of the estate, and leased the same, except a portion of the
cellar, to many tenants, each occupying the particular portion
of the estate leased to him; and thus the ownership and occu-
pation remained for several years.   During this time, although
the original landlord and his subsequent grantees were in the
open, peaceable and absolute possession of the property, Fogg
contended that he had a right to possession, under his lease, and
in July 1875, when the owner of the estate was removing the

ruins of the fire, made an assignment of. his lease to the present plaintiff. In the spring of the next year, the plaintiff, describing himself as of Bath in the State of Maine, commenced against these defendants, in the Circuit Court of the United States, a writ of entry to recover possession of this estate, of which estate he alleges himself to have been disseised by the defendants. It does not appear that during the last four years, since the commencement of that suit, any step has been taken in its prosecution, but it remains upon the docket of that court. Nearly two years afterwards, in June 1878, the plaintiff commenced proceedings against the defendants before the First District Court of Essex County, by an action like this, of forcible entry and detainer; and, upon trial in that court, judgment was rendered for the defendants, from which judgment the plaintiff appealed, and that action is still pending. Subsequently to bringing that suit, on July 19, 1878, the plaintiff procured the assistance of some twenty men, and very early in the morning, before any of the tenants of the building had arrived at their respective places of business, these twenty men succeeded in forcibly making their way into the various portions of the building occupied by the respective tenants, and by force, by barricading the doors and otherwise, attempted to prevent the tenants from entering into the building, or in any mode exercising any right therein, under their leases.

Of course, as the tenants arrived at their respective places, they took possession, and ejected those who had intruded; and the precise question which this court is called upon to decide is whether it is its duty, irrespective of the rights of the parties, to put back into that building these men who thus forcibly, at an unseasonable and unreasonable hour, obtained access to the various rooms, and endeavored to prevent the actual occupants, who had been enjoying the same for years, from continuing their occupation.

It is to be remembered that this is an action, not for the purpose of trying the rights of parties to the title to the estate, but it is in its nature an action by which one who has been in the enjoyment, of an estate peaceably may be restored to that enjoyment, as against one who forcibly deprives him of it. If a text-writer should undertake to illustrate the exact acts

which a party should be required to prove to entitle him to maintain this action, probably no more pertinent or precise illustration was ever practically afforded than those which the conduct of this plaintiff towards these tenants showed. Take for illustration any one of those tenants who had been peaceably occupying his apartments every day for years. Such tenant, on a morning in July, found a stranger occupying and claiming to occupy by force, under a title in conflict with his own, the premises which had been his daily resort under a lease which he had been enjoying for years. That is the precise case in which this process will lie. If there is any one paramount rule of law, it is that disputed titles and rights under them shall be settled by law, and not by force. If therefore these parties who had been in peaceable possession of this estate, finding themselves ejected or kept out by force, can be restored by process of law to their possession, how absurd is the proposition that those who ejected them can also be restored to the fraudulent possession which they had obtained. If one who gets possession by force can under this process be restored to that possession, then those who are thus ejected may in their turn eject those who by force had ejected them, and the law will continue to put in, *toties quoties*, the respective parties as they have been variously thrown out. Nothing can be more absurd than the idea that each of the parties can at the same time have the right to this process for the same estate.

The process is for the purpose of restoring one to a possession which has been kept from him by force. It is not a process against a party who resists the right of possession by force, but it is for an interference with an actual possession. The claim that this plaintiff was ever in possession of this estate is simply preposterous. He had no more possession of it than he would have had of one of the rooms of the building if he had gone into such room and said to the occupant of it: "I have come to take possession of this room. Here I am, in possession; you will please to go out. I propose to hold this by force, and if you attempt to remove me by force, then the weaker of us on being ejected will bring an action of forcible entry and detainer against the other." But to make this illustration precisely analogous, we will say that this party, instead of calling

in at the place of business when the tenant was there, took the opportunity while he had gone to dinner to clamber through the transom-window over his door, and in the mode before suggested salute him upon his return. It would be a disgrace to the law, and to all concerned in the administration of it, to say that a possession thus forcibly obtained, before the business hours of the day, from one who is in the actual, peaceable occupation of the premises, is to be protected and restored by the law when the actual occupant shall resume his occupation. See *People* v. *Reed*, 11 Wend. 157, 159, in which *Savage*, C. J. says: " A mere intruder or trespasser could not institute proceedings under this statute, and be restored to the possession which he held unlawfully; but every person lawfully in possession, and forcibly excluded from such possession, is entitled to the benefit of this statute."

This action has by statute been so extended that there are two cases in which the right of possession may be tried in it. One of them has existed for many years. The relation of landlord and tenant is such that it was deemed advisable to give to a landlord a summary process by which to eject a tenant after the determination of the tenant's estate; and so, for a long series of years, it has been the law of this Commonwealth that this writ might be used for the purpose of restoring to his possession a landlord whose tenant is holding his estate after his right to hold it has ceased. And although this writ is used, and the process is frequently called a process of forcible entry and detainer, yet it is not strictly a process of forcible entry and detainer, but it is given as a remedy to a landlord whose tenant holds without right, whether by force or not; but in such case it is always limited to the case of a tenant, for, the tenancy having been proved, the title of the landlord could not be brought in question, and the only issue which could be tried is whether the rights of the tenant under his lease had expired. In 1879, the Legislature extended this remedy to another class of cases deemed so analogous to the relation of landlord and tenant as properly to be the subject of this kind of proceeding. By the St. of 1879, *c.* 237, when a mortgage of real estate is foreclosed, the person having a valid title to such estate, if kept out of the possession by a person

without right, may have this process to put him into posses-
sion. But this process has not been extended so as to try the
right of possession to lands in any other case.

Perhaps a recurrence to the origin of the statute under which
this process is brought may be of service in illustration of the
views before presented. In the earliest days of the English
common law, any man who had a right of entry into lands was
authorized to enter with force and arms upon such lands, and
by force and arms retain his possession. Possibly, however,
this rule, even at that early time, was subject to some qualifi-
cation, such as that the entry must not be by a breach of the
public peace. The precise condition of the law at that period
is immaterial, because the general subject of the establishing
of his own rights by an individual by force became very early
matter of legislation, and we find as far back as 2 Edw. III.
the Statute of Northampton, and again in the 5 & 15 Ric. II.,
further legislation, and a general revision of the law upon the
subject in 8 Hen. VI., which is substantially the origin of our
existing law upon the subject of forcible entry and detainer.
2 Edw. III. c. 3. 5 Ric. II. c. 8. 15 Ric. II. c. 2. 8 Hen. VI.
c. 9. See remarks of Chief Justice Bigelow, in *Presbrey* v.
*Presbrey*, 13 Allen, 281, 284.

The proceedings under this statute were originally by in-
dictment, though at the complaint of the injured party; and
by the St. of Hen. VI. the court before whom the cause was
tried, although by indictment, had authority to order the resti-
tution of the detained estate to the party entitled to it; and
perhaps generally, now, in those States in which the St. of
Hen. VI. has been followed, the prosecution under the statute
is ordinarily a public prosecution by indictment; and forcible
entry and detainer is perhaps more commonly treated by text-
writers as a crime to be punished by indictment, than as a mere
civil wrong to be redressed by private action.

In this Commonwealth, however, unless the entry or detainer
is accompanied by an actual breach of the peace, the course
of legislation has made the process substantially a civil pro-
ceeding, and has prescribed the form of writ or complaint and
declaration which any private party may sue out before the
proper justice; and by incorporating into the statute the right

to recover by the same process lands unlawfully held by a tenant against his landlord, the statute, as a statute of forcible entry and detainer simply, seems encumbered with some anomaly. This very course of legislation, however, can be explained only upon the theory that this is not a process to determine the actual title to an estate, nor to determine the right of entry to an estate, but simply a quieting process, by which a party in possession of an estate shall not be dispossessed of that estate by force; but the law will preserve his possession to him in a summary manner, until the right of possession can be tried in due course of law and by due forms of law, rather than left to be determined by the relative strength of the parties.

It being entirely clear in this case that the defendant by his tenants was in the quiet and peaceable possession of the estate, and that the plaintiff, in violation of law and of the rights of those in possession, by force and numbers gained a temporary foothold, but no possession of the estate, it follows that he cannot maintain this action.

It is true that the plaintiff in his brief seems to contend that he could recover possession of this estate by virtue of the assignment of the lease to him when the original lessee, as the plaintiff contends, was in possession, and that this action is not barred by the statute limiting his right to bring it to three years. It would certainly be unjust and inequitable to allow this claim to be considered. The plaintiff commenced an action of this kind in June 1878, before the First District Court of Essex County. In that action, judgment was rendered against him, and he appealed to the Superior Court, in which court that action is now pending. His right to maintain that action depended upon the question whether he then had a right of possession from which he was excluded by force. That question was decided adversely to him. It is quite apparent that he understood that that decision was made upon the ground that he had never had possession of the estate under that assignment. Thereupon, in July 1878, he made the entry into the building with the assistance of some twenty men, in the manner before stated. That entry he then claimed, and now claims, to have been a legal entry; and it was the possession which he had thus acquired which he claims to have

restored to him. It was the disturbance of that possession which he claimed to be a cause of action, and which he now claims to give him the right of action. The defendants under such circumstances could not plead in abatement the pendency of another action for the same cause, for the possession which he asked to have restored to him in the former writ was a possession from which he claimed to have been ousted several years before, and the possession to which he now asks restitution is a possession from which he was ousted after the date of his former writ and . the trial of his former action. If he could be now permitted to claim under what he alleges to be that old possession, there would seem to be no rule of law which could prevent the pendency of any number of actions for the same cause.

It cannot be questioned that, if the defendants had pleaded the pendency of the former action in abatement to this, the reply would have been made, and it would have been a conclusive one, that the forcible entry of which he complained in this suit was one which occurred, not only after the former suit was commenced, but after it had been tried and judgment entered upon it in the court to which his writ was returnable. By the strictest rules of law, as well as by all considerations of equity and justice, his rights must be determined by the rightfulness of that possession from which he was ousted, and his right to which he brought this suit to determine.

*Judgment on the verdict for the defendants.*

The case was argued at the bar in November 1880, and was afterwards submitted on briefs.

*C. P. Thompson & J. W. Pickering*, for the plaintiff.

*S. B. Ives, Jr.*, for the defendants.