## George E. Page *vs.* R. Ogden Dwight.

Hampshire.    September 21, 1897. — December 8, 1897.

Present: Allen, Holmes, Knowlton, Morton, & Barker, JJ.

*Forcible Entry and Detainer — Statute.*

Although a forcible entry by one entitled to possession is forbidden by statute, a
forcible entry by the owner entitled to possession does not, since August 7, 1852,
enable the person put out by force to maintain the summary process under the
statute to recover the possession from which he was wrongfully ousted.

ACTION on Pub. Sts. c. 175, to recover possession of a house
and land in South Hadley, alleged to be held by the defendant
unlawfully, and against the right of the plaintiff.    At the trial
in the Superior Court, before *Dewey*, J., the jury returned a ver-
dict for the defendant; and the plaintiff alleged exceptions.
The facts appear in the opinion.

*A. L. Green*, for the plaintiff.

*W. G. Bassett*, for the defendant.

BARKER, J.    The plaintiff bought and went into peaceable
possession of land subject to mortgage.    His estate was ended
by a foreclosure sale, under which the defendant acquired title
and the right to possession, which he could have recovered by a
summary process under Pub. Sts. c. 175.    He was forbidden by
Pub. Sts. c. 126, § 15, to take possession by force.    Instead of
resorting to the statute process, he employed force of numbers,
and violence, and by an actual breach of the peace put out the
plaintiff and his family, and so obtained possession by force.
The plaintiff thereupon brought this action under Pub. Sts.
c. 175, and he contends that because the defendant ousted him
by force his own possession is to be restored.    At the trial, the
plaintiff asked rulings that no question of title is in issue in the
action; that the issue is whether, once being in rightful posses-
sion, he was forcibly put out; and that, if so, he is entitled to
judgment, even if at the time of the forcible entry the defend-
ant had the title and right of entry, and was lawfully entitled
to possession.    The court refused these rulings, and charged the
jury that, if the mortgage had been duly foreclosed by sale, and

the title had passed to the defendant, he had a right, so far as the plaintiff was concerned, to eject him as he did, and the action could not be maintained. The defendant had a verdict, which under the rulings did not negative the force, but which shows that the jury found the title and right of possession in the defendant.

In one sense, the ruling that the defendant had the right, so far as the plaintiff was concerned, to evict him by force, was wrong, because all such forcible entries are forbidden, and the plaintiff, as a citizen, is within the protection of the standing laws. But if, notwithstanding this unlawful use of force, the plaintiff cannot have this process against one who is entitled to possession, his exceptions must be overruled.

Before 1620 there were many English statutes and decisions upon the general subject of forcible entry and detainer. See Sts. 2 Edw. III. c. 3, prohibiting force; 5 Rich. II. c. 8; 15 Rich. II. c. 2; 4 Hen. IV. c. 8 ; 8 Hen. VI. c. 9; 31 Eliz. c. 11; 21 James I. c. 15; Cromp. 76, 163; Dalt. c. 125; Com. Dig. [Forcible Entry] ; 4 Bl. Com. 148. The state of the early law was considered in the decisions of this court in *Commonwealth* v. *Shattuck*, 4 Cush. 141; *Howard* v. *Merriam*, 5 Cush. 563 ; *Presbrey* v. *Presbrey*, 13 Allen, 281 ; *Hodgkins* v. *Price*, 132 Mass. 196. It would seem that every forcible entry by a private individual was unlawful, and might subject him to punishment, and that in addition, in most cases, the person forcibly put out of possession might be put back by legal proceedings without regard to the question of the true title or right of possession. Ordinarily, the status of possession before the force was restored by the interference of the public power acting through public officers.

Although this state of the law was operative here as the common law of the Colonies, there were also statute provisions concerning the use of force, and forcible entry and detainer, in the Plymouth and Massachusetts Bay Colonies and in the Province.

In the general laws and liberties of New Plymouth Colony, revised and published by order of the General Court in the year 1671, are provisions against forcible entry or detainer after judgment. Plym. Col. Laws, 248, 249.

A substantially similar provision is found in the General Laws and Liberties of Massachusetts Bay Colony, in chapter fifteen,

entitled, " An Act as to judgment respecting real estate." See
Anc. Chart. 54; Col. Laws (Whitmore's ed., 1658), 11.

In the Prov. Laws, 1692, c. 11, an act for the punishing of
criminal offenders, § 6, gives power to justices of the peace to
stay and arrest breakers of the peace, and to " make inquiry
of forcible entry and detainer, and cause the same to be re-
moved." Anc. Chart. 239, 240.

In 1701 there was a Province act directing proceedings against
forcible entry and detainer. It required the justices of the
peace, upon complaint of any wrongful and forcible entry made
into any lands, tenements, or other possessions, or of any wrong-
ful detainer thereof with force and strong hand, to go to the
place, taking sufficient power to arrest the offenders, and pro-
viding that two justices, *quorum unus*, should inquire by the
oaths of the people " as well of them that make such forcible
entry into lands, tenements, or other possessions, as of them that
hold the same with force," and to cause the same " to be reseized
and thereof the party to be again put into possession, who in
such sort was put out or holden out." The inquiry was to be
made by a jury sworn to inquire of such forcible entry or forci-
ble detainer. The justices might impose a fine upon the offend-
ers, or bind them to appear at the next general sessions, with a
proviso that the act should not extend to persons who had had
occupation or been in quiet possession for three whole years,
their estates therein not ended or determined. Anc. Chart.
353–355.

After the adoption of the Constitution of 1780, there was a
new " Act directing the proceedings against forcible entry and
detainer." St. 1784, c. 8. This statute gave to two justices of
the peace, *quorum unus*, authority to inquire by a jury against
those who make unlawful and forcible entry into lands or tene-
ments, or who, having a lawful and peaceable entry, unlawfully
and by force hold the same, and to cause the party complaining
to have restitution. Forms were prescribed for the proceedings,
which were in the name of the Commonwealth, upon complaint
of the party aggrieved. See *Commonwealth* v. *Dudley*, 10 Mass.
403; *Commonwealth* v. *Bigelow*, 3 Pick. 31. In the form of ver-
dict is a recital that the jury do find that the lands or tenements
upon a day stated were " in the lawful and rightful possession

of" the complainant, and that the defendant "did upon the same day unlawfully with force and arms and with a strong hand enter forcibly upon the same (or being lawfully upon the same did unlawfully with force and a strong hand) expel and drive out" the complainant, "and that he doth still continue wrongfully to detain the possession from him . . ., wherefore . . . the said A. B. ought to have restitution thereof without delay." Upon the return of a verdict for the complainant, the justices were to enter judgment for restitution, and award a writ of restitution; and no appeal was allowed, although the proceedings might be removed by certiorari into the Supreme Judicial Court and there be quashed for irregularity. The judgment was not a bar to any after action brought by either party; and there was also a proviso that the act should not extend to any person who had had occupation or been in quiet possession for three years, and whose estate was not ended or determined. St. 1784, c. 8.

It is to be noticed that this statute omitted any provision for the punishment of those found to have entered or retained possession by force, and gave in terms jurisdiction only against such as made "unlawful and forcible entry," or "unlawfully and by force" held after a lawful and peaceable entry, while in the Province statute of 1701 the section conferring jurisdiction gave it upon complaint of any "wrongful and forcible entry," or any "wrongful detainer . . . with force and strong hand," and if the finding was of a forcible entry or forcible holding, without a finding that it was wrongful, restitution was to be made.

The statutes so far considered dealt with forcible entry and forcible detainer only. A summary remedy was given by St. 1825, c. 89, entitled "An Act providing further remedies for landlords and tenants," to persons having the right of possession of houses and tenements. Actions under this statute were in the name of the party aggrieved. The defendant was not allowed to offer, under a general issue, any evidence that might bring the title of the freehold in question, and if he pleaded title in himself or a third person he was required to recognize to enter the action in the higher court, and if he refused judgment went against him as upon a refusal to answer. But the proceedings plainly allowed the title to the freehold to be tried, at the will of the defendant, and there was no pro-

vision that the judgment should not be a bar in future actions. Although this statute was broader than its title, and under its terms an "occupant" who had entered forcibly might be dispossessed, after notice to quit, it did not afford a remedy against an occupant who had entered forcibly, but who had the right of possession, because only a person who had the right of possession could summon him to answer, or could sustain the complaint.

These statutes of 1784 and 1825 were in force when the commissioners appointed under the resolve of February 4, 1832, to revise the general laws, made their report to the Legislature in 1834. The commissioners placed in chapter one hundred and four of their report, entitled " Of Forcible Entry and Detainer," two sets of provisions, one concerning forcible entry and detainer, the other concerning tenants who hold over after the expiration of their right. At the head of the chapter was a section declaring that no person shall make any entry into lands or tenements except where his entry is allowed by law, and that in such cases he shall not enter with force, but in a peaceable manner. The next section provided generally, without qualification, that when any forcible entry should be made, or possession should be held by force, the person forcibly put out or held out might be restored upon complaint to two justices, who should command a jury, and if the verdict showed the lawful possession of the complainant, and a forcible entry or an unlawful and forcible detainer from him who was lawfully entitled to possession, there should be judgment for restitution. The provision that the judgment should not be a bar was retained. § 18. After the provision concerning forcible entry and detainer were sections providing for the summary removal of lessees holding without right after the termination of a lease. §§ 20 et seq. In their notes, the commissioners say that the rule embodied in section one is fully recognized as part of our common law, and plainly implied from the provision of St. 1784, c. 8, and that they insert it, as it is in the English statutes, as the basis of all the provisions on this subject; and they point out that, while the provisions for the removal of lessees who hold over are narrower than those of St. 1825, c. 89, the cases which could be dealt with by that statute, and not by the reported sections concerning landlords and tenants, could be

dealt with, if possession were obtained or held by force, under the sections concerning forcible entry and detainer; and that, if the party who had acquired the possession did not retain it with force, the injured party would find a sufficient remedy in an action of trespass or a writ of entry. This report was made on December 31, 1834, and the Revised Statutes were approved on November 4, 1835, to take effect from and after April 30, 1836. It is to be noticed that under the commissioners' draft the summary remedy given by St. 1825, c. 89, to whoever has the right of possession, where a " tenant or occupant " holds without right and after notice to quit, could not be availed of in cases of forcible entry or detainer, where the defendant was not a tenant holding over.

In April, 1835, before the enactment of the Revised Statutes, an additional statute was passed, declaring that the provisions of St. 1825, c. 89, should be " construed to apply to all cases of forcible entry and detainer, and all cases of detainer of any lands or tenements wherein the person or persons hold the same without right, or as mere trespassers," thus excluding the case where the person guilty of the force had the right of possession, and " to all cases where any tenant shall make default in the payment of rent according to the terms of any written agreement or lease between the parties," and that in all such cases the like proceedings might be had as if the relation of landlord and tenant had theretofore existed between them. St. 1835, c. 114. It would seem that, while this statute extended the remedy by proceedings under St. 1825, c. 89, to those cases of forcible entry or forcible detainer where the person who was guilty of the force had no right or was a mere trespasser, it did not extend them to those cases where the owner of the title, or one who had the right of possession, was guilty of a forcible entry or detainer.

For some reason, and perhaps wholly or partly in consequence of this statute of 1835, the provisions reported by the commissioners for an inquiry by a jury in case of forcible entry and detainer were omitted from chapter one hundred and four, as embodied in the Revised Statutes. The declaration that no person shall enter except where his entry is allowed by law, and not with force but in a peaceable manner, was retained as the first

section; and the second section provided that when a forcible entry was made, or after peaceable entry possession was unlawfully held by force, and also when a lessee or any person holding under a lease holds possession without right after determination of the lease, " the person entitled to the premises" might be restored to the possession thereof in a peaceable manner. This language seems to leave without remedy under the statute the case where one not legally entitled to possession is forcibly put out by the true owner, or by one entitled to possession; for in such case the party forcibly put out is not a "person entitled to the premises," and by the terms of the statute such persons only are to be restored. From the subsequent sections, prescribing the manner in which the proceedings should be conducted, it is plain that the title to the freehold might be brought in question in all cases, and if so the cause was to be transferred at the request of either party to a higher court. Rev. Sts. c. 104, §§ 9, 11. Either party might appeal. Rev. Sts. c. 104, § 8. Yet the judgment was declared by the statute not to be a bar to any action thereafter to be brought by either party to recover the premises in question, or to recover damages for any trespass thereon. Rev. Sts. c. 104, § 12.

In 1849 it was held by this court, in *Commonwealth* v. *Shattuck*, 4 Cush. 141, that, in addition to the statute remedy, an indictment lies at common law for a forcible entry, and that it is a sufficient charge of the offence to allege the entry to have been made unlawfully, with force and arms, and with a strong hand. The provisions of Rev. Sts. c. 104, § 1, are mentioned in the decision, and it is said that, if the case required it, it might be proper to consider whether that section would not make a forcible entry a statute offence, and punishable under Rev. Sts. c. 139, § 1. See also *Commonwealth* v. *Haley*, 4 Allen, 318.

The attention of the Legislature was called to the condition of the law concerning forcible entry and detainer, in January, 1851, by the report of Benjamin R. Curtis, Nathaniel J. Lord, and Reuben A. Chapman, commissioners appointed to revise and reform the proceedings in the courts of justice. Speaking of the process for forcible entry, they say: "The object of this process is not to settle title, but only the right of present possession;

and not even this, except in cases where the possession has been disturbed, or an entry is prevented, by force. It is really to quell force and violence, and to protect the public peace, by promptly depriving the wrongdoer of the fruit of his wrong. This is very different from a case where a tenant holds over after the end of his term, and requires a different remedy; and the ancient and long existing law of the State provided one adapted to the case, but differing widely from the landlord and tenant's process. The former, as we have said, did not involve title. If the person entering or detaining by force was the lawful owner, and the complainant had, as against him, no mere right whatever to the property, such owner was to be turned out of the possession which he unlawfully gained by force." Criticising the provisions of Rev. Sts. c. 104, the report says further: "If it was meant that the title can and may be put in issue in a process for forcible entry, it is plain it ceases to be of any value when the party who entered with force had title, and the process becomes a clumsy writ of entry, which tries the title without settling it. We have concluded, therefore, to recommend the restoration of the law substantially as it existed from ancient times." 2 Life and Writings of B. R. Curtis, 162, 164. Mass. Leg. Doc. 1851, House No. 17. This recommendation was adopted by the Legislature, and the sections drafted by the commissioners for the purpose were enacted in the original practice act, St. 1851, c. 233, §§ 76–95, which repealed so much of Rev. Sts. c. 104, as related to forcible entry and detainer, and substituted a process in the name of the Commonwealth by inquisition by a trial justice and a jury, upon complaint by the party aggrieved. This statute was in effect from August 31, 1851, to August 7, 1852. It is plain that under it a person in possession without right, if forcibly dispossessed by the true owner, or by a person entitled to possession, could be restored to the possession from which he had been ousted by force. But the St. 1852, c. 312, § 86, which took effect August 7, 1852, repealed St. 1851, c. 233, and as there was then no permanent statute declaring that the repeal of an act should not revive statutes in force before the act repealed took effect, the repealed provisions of Rev. Sts. c. 104, were thus revived, and again governed proceedings for forcible entry

and detainer.    See St. 1869, c. 410, cl. 1 ; Pub. Sts. c. 3, § 3,
cl. 1.    This sudden return to the system under which the writ
was in the name of the party, and not of the Commonwealth,
which gave the process only to a " person entitled to the prem-
ises," which required him to prove that he was entitled to
possession, and which said that the defendant should have
judgment if the plaintiff failed to prove his right to the pos-
session, has the greater significance because of the clear and
forcible explanation of the old law, and of the defects of that
substituted for it, given in the report of the eminent lawyers
who prepared the report of 1851, and by whose recommendation
the system by which the effect of the force was removed without
regard to the right of possession, was restored by one Legisla-
ture only to be discarded by its successor.

The provisions of Rev. Sts. c. 104, as restored by the repeal
of St. 1851, c. 233, with those of some additional acts not now
material, were re-enacted in Gen. Sts. c. 137, retaining in § 2
the words " the person entitled to the premises may be restored
to the possession," and in § 5 the words " the person entitled to
the possession of the premises may take . . . a writ," and in § 7
the provision that if it appears " that the plaintiff is entitled to
the possession of the premises," used in the corresponding pro-
vision of Rev. Sts. c. 104, as also the provision that if the
plaintiff becomes nonsuit, " or shall fail to prove his right to the
possession," the defendant shall have judgment.    At the same
time the summary process was extended to cases where the
lessee's estate is determined by the landlord's entry for breach
of condition, by the introduction by the Legislature of the words
" or otherwise " into Gen. Sts. c. 137, § 2, in consequence of the
decision in the case of *Fifty Associates* v. *Howland*, 11 Met. 99.

By St. 1879, c. 237, it was provided that when a mortgage of
real estate is foreclosed by sale under a power, and a person hav-
ing a valid title to the estate is kept out of possession by any
person without right, he may recover such possession in the
manner provided by Gen. Sts. c. 137.

The statutes were again revised and embodied in the Public
Statutes, approved November 19, 1881, to take effect from Jan-
uary 31, 1882.    The provision forbidding forcible entries is now
contained in Pub. Sts. c. 126, § 15, and the others are substan-

tially re-enacted in Pub. Sts. c. 175, except that Gen. Sts. c. 137, § 3, is now Pub. Sts. c. 121, § 11 in part, and Gen. Sts. c. 137, § 6, is merged into Pub. Sts. c. 161, § 27.   The language of Pub. Sts. c. 175, § 1, is that " the person entitled to the premises may recover possession thereof " ; of § 5, that, if it appears " that the plaintiff is entitled to the possession of the premises, he shall have judgment and execution for the possession and for his costs " ; and of § 2, that " such person may take . . . a writ," that is to say, " the person entitled to the premises," as stated in the preceding section.   The provision that, if the plaintiff becomes nonsuit, " or fails to prove his right to the possession," the defendant shall have judgment, is retained.   Pub. Sts. c. 175, § 5.

From all this it appears that both the course of legislation and the language of the present statutes show that the process cannot be maintained by one who has been forcibly put out from a peaceable possession lawfully obtained, if he was so evicted by one who had the title and the right of possession. But in arriving at the true construction of a statute, we must consider not only the course of legislation and the language used, but the decisions of the court in causes which have required a construction of the statute.   A construction so given by the court remains the authoritative exposition of the statute, until reversed by the court or abrogated by some action of the Legislature.   It is contended by the plaintiff that the decision in *Hodgkins* v. *Price,* 132 Mass. 196, has given a construction to the statutes under which he can maintain this action.   That case was begun in 1878, under Gen. Sts. c. 137, and was decided in 1882.   As has been seen, there is no substantial difference affecting the present question between the statute now in force and that under which *Hodgkins* v. *Price* was brought.   In that case the plaintiff had an assignment to himself of a lease of certain land of which he never had been in possession, and upon which were tenements occupied by persons who held under another title.   He entered by force and gained a temporary foothold, and was in turn at once put out by force by those whose possession he had forcibly interrupted.   Thereupon he brought the statute process, asserting a right of possession under his lease, and relying upon that and the forcible entry which put him out

of the tenements when he had himself got a temporary posses-
sion by force. His entry was in the morning before business
hours, and he was promptly put out by the occupants as they
arrived at the accustomed time. He was not allowed to main-
tain the action, and the decision holds that such a temporary
possession, obtained by a violation of the statute forbidding for-
cible entries, is not to be restored by the statute process, even
though the person who has so obtained possession had the actual
right of possession when he entered by force, and that the rights
of such a plaintiff " must be determined by the rightfulness of
that possession from which he was ousted." The case was one
of the class in which Bracton says that the first and principal
remedy is that he who has been disseised may reject the spoiler,
by his own strength if he can, or by force called in, or recalled,
while yet no interval has elapsed, the disseisin and wrong being
flagrant. Bract. De Ass. Nov. Disseisin, fol. 162 b. That is to
say, the attempted forcible entry and the recapture are but
one transaction, and the recapture is not a forcible entry, but is
a successful and proper resistance of a forcible entry ; and so the
wrongdoer, who began the force, cannot be heard to say that a
forcible entry has been committed against himself, for all that
has been done against him is to resist successfully his own wrong-
ful act. Bracton says that forthwith to repel force by force is
to do so as soon as the force is known, and before the party
aggrieved has resorted to some other remedy ; and that he can
expel him immediately, and on the same day if he can, and if he
cannot expel him on that day, he may on the morrow or on the
third or fourth day, rallying his strength, collecting arms, and
calling to his aid his friends. Bract. fol. 163. Nor can the true
owner after being so entered by force have an assize, " quia
assisam demeruit et gratiam juris, et quia frustra legis auxilium
invocat, qui in legem committit." Bract. fol. 163 b. The same
result reached in *Hodgkins* v. *Price* would follow, whether, as
intimated in the opinion, our process for forcible entry is " sim-
ply a quieting process," by which any party in possession of an
estate shall not be dispossessed by force, but his possession shall
be preserved to him ; or whether it is a more restricted remedy,
to be given only where the party who invokes it shows not only
that he has been put out by force but that he is also entitled to

possession. Under either construction, the plaintiff in *Hodgkins* v. *Price* could not have the statute process; as against him, the facts did not constitute a forcible entry, but merely a resistance and neutralization of his own attempted force. No discussion or determination of the general scope and effect of the statute was necessary to the decision, and therefore the observations in the opinion, which seem to indicate that our statute remedy for forcible entry and detainer is open to any person who has been forcibly put out, without regard to title or right of possession, do not constitute an authoritative construction of the statute. The opinion, while reviewing in part the course of legislation, makes no mention of the facts, that the portion of St. 1851, c. 233, which substituted for the forcible entry and detainer provisions of Rev. Sts. c. 104, another system, in which, without regard to the state of the title or to the right of possession, a remedy was clearly given to restore any one put out by force, was quickly repealed by St. 1852, c. 312, § 86, and that the former system, substantially identical with the present one, and giving the remedy only to those entitled to the premises, was permanently restored.

Upon the whole, we think that the better view is that the Legislature, after making a fresh trial of the ancient system under which a possession ended by force might be restored without regard to title or right of possession, thought it better to provide that those only who had a right of possession should be put in by the courts, and to leave to the criminal law the acts of one who, being entitled to possession, takes it by prohibited force.

In the present case, the party guilty of the force asks no aid of the court, and we are not now concerned with his punishment, although from the time of the English settlement the use of force here by private individuals to obtain possession, even though they have title and right of possession, has been forbidden by the common or the statute law.

We are of opinion that, by the true construction of Pub. Sts. c. 175, the process is not given to one who is not entitled to the possession of the demanded premises as against the defendant; and that, if the present plaintiff was not entitled to possession as against the defendant when the latter put him out by force, the plaintiff cannot have the statute process.

*Exceptions overruled.*