Burnes, J.
INTRODUCTION
The plaintiff Polar Corporation (“Polar”) is seeking a preliminaiy injunction against the defendant USS Industrial ParkAssociates, LLC (“Landlord”) to prevent the Landlord from continuing to interfere with the shipment of product to warehouse space (the “Premises”) at 1060 Millbury Street, Worcester, subleased from Polar to A. Duie Pyle, Inc. (“Duie Pyle”).
FACTUAL DISCUSSION
Polar originally leased the Premises for storage of carbonated beverages and bottled water. In 1997, the amount of space leased was reduced from approximately 218,000 square feet to approximately 165,000 square feet. Polar did not need all of the reduced space until the end of the lease in May 1999.
Duie Pyle ships consumer lawn care products, including lawn fertilizer and related equipment, to retailers. It sought to sublease approximately 100,000 square feet from Polar for storage of these products until they were shipped to the retailer in the spring. •
These facts are not in dispute. Nor are the facts concerning the right of Polar to sublease its space. It may do so with the consent of the Landlord and the Landlord is not unreasonably to withhold or delay its consent.
What is in dispute is whether the Landlord has unreasonably withheld its consent to the subtenancy of Duie Pyle. The Landlord says it objects to this subtenancy because it is concerned about the odor from these lawn care products. It is concerned that the other cotenant of the space will be adversely affected by the odor from these products and that the odor may permanently permeate the building. Polar maintains that the Landlord has unreasonably with *529 held its consent and, acting on that, sublet the premises to Duie Pyle. Duie Pyle began to move its products in in November. The Landlord served a Notice to Quit in December and, on December 14, 1998, sent security guards to the warehouse and blocked trucks sent by Duie Pyle from delivering lawn care products to the warehouse.
LEGAL DISCUSSION
The Court finds that Polar is likely to succeed on the merits of its claim that the Landlord has unreasonably withheld its consent to the sublease of this warehouse space. A commercial landlord may withhold consent to a sublease if it determines that the sublease will damage (1) its interest in preserving its property or (2) its interest in having the terms of the prime lease performed. Worcester-Tatnuck Square CVS, Inc. v. Caplan, 33 Mass.App.Ct. 499, 503 (1992). The Landlord does not claim that there is any danger to its interests in having the terms of the prime lease performed. It does claim that its interest in preserving its properly is imperiled. It appears unlikely, although not impossible, that this claim will succeed.
The cotenant of the same warehouse space at 1060 Millbury Street has asked to sublease some of the remaining Polar space, indicating that there is nothing so offensive about the 11,000 pallets of lawn care products that have already been delivered to this space since November interferes with their ability to do business. In addition, the Landlord has indicated that it has no objection to the sublease of 25,000 square feet of the space to Duie Pyle so long as it could lease the remaining space to a new tenant of its own. The Landlord has provided nothing to show that its interests in preserving its property will be harmed by odors from the use of 100,000 square feet of space but not from sublease of 25,000 square feet.
As to harm: Polar acknowledges that this is a somewhat unusual case in that it might be possible to calculate its damage from interference with its sublease with Duie Pyle in dollars. However, citing Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 29 (1981), it notes that “(t]he preservation of legitimate economic expectations pending the opportunity for trial is a basis for granting preliminary injunctive relief.” Here Duie Pyle could allege damages against Polar for failure to insure its access to the subleased premises, damages which likely would include consequential damages. Such damages are complicated and difficult to prove.
The Landlord,'on the other hand, demonstrates no irreparable harm. First, if the Landlord had truly thought it was going to be harmed by the odor emanating from the lawn care products, it could have sought relief from this court a month or so ago. It took no action when Duie Pyle started moving in lawn care products except to send a letter telling Polar it had 30 days to cure its default (by subleasing without consent). Duie Pyle occupies approximately seventy-five percent of the 100,000 square feet of subleased premises now. But the Landlord is still getting its rent; no tenant has threatened to leave. Indeed, one tenant has sought to lease space adjoining the sublet premises. Lastly, but maybe most importantly, the Landlord cannot simply use self help to keep the subtenant from using the premises. Hodgkins v. Price, 132 Mass. 196, 198 (1882) (“If there is any one paramount rule of law, it is that disputed [property] rights . . . shall be settled by law, and not by force”).
The Landlord has an adequate remedy to resolve the dispute over the lease. It has served a Notice to Quit and the summary process procedure is certainly adequate to determine the rights and obligations of the parties under the lease. If Polar is evicted for wrongfully subleasing the premises, then Duie Pyle will have to depart also. In the meantime, it is appropriate to maintain the status quo.
CONCLUSION
For the reasons stated above, the Court grants the motion for a preliminary injunction sought by Polar Corporation and ORDERS that USS Industrial Park Associates, LLC cease and desist from its interference with the truck shipments of Duie Pyle to the sublet premises at 1060 Millbury Street, Worcester.