## McINTYRE v. MURPHY.

1. PLEADING — DECLARATION—AMENDMENT — TRESPASS — STATUTE OF JEOFAILS.

   Where a declaration states that recovery is sought under section 11206, 3 Comp. Laws, relative to treble damages for trespass on lands, and it is conceded that the case made in the declaration is not within the section, no prejudice arises from allowing the plaintiff to amend at the conclusion of the trial by striking out the allusion to the statute, such amendment being clearly authorized by section 10268, 3 Comp. Laws.

2. FORCIBLE ENTRY AND DETAINER—WHAT CONSTITUTES.

   Where a vendor, entitled to possession for default of the purchaser, attempts by a display of force to remove the purchaser's goods from the premises, the fact that the vendor and his employés obtained entry into the house without force does not render his conduct any the less a violation of the statute against forcible entries.  Section 11153, 3 Comp. Laws.

3. SAME—RIGHT OF ACTION.

   Where a person not entitled to possession is evicted contrary to the forcible entry and detainer statute, he cannot recover damages for being disturbed in his possession of the land, but he may recover compensation for any injuries done to himself or his personal property in the course of the eviction.

4. EVIDENCE—PERSONAL INJURIES—MATERIALITY.

   In a personal injury case it is not error to refuse to compel plaintiff's physician to state, on cross-examination, what treatment he gave, on the theory that the treatment might have had something to do with her condition, since, if the treatment had not been proper, that fact would not lessen defendant's liability.

Error to Berrien; Coolidge, J.  Submitted June 8, 1908.  (Docket No. 37.)  Decided June 27, 1908.

Trespass quare clausum fregit by Sarah E. McIntyre against Mary L. Murphy.  There was judgment for plaintiff on a verdict directed by the court, and defendant brings error.  Affirmed.

*James O'Hara*, for appellant.

*Cady & Andrews*, for appellee.

March 4, 1907, plaintiff and defendant entered into a written contract whereby the defendant sold to the plaintiff certain land in the township of Chikaming in Berrien county for the sum of $7,000. Plaintiff paid part of this consideration and was given possession of the land. A payment became due in August, 1907. This payment was not made by plaintiff. Defendant demanded possession. Plaintiff refused to comply with this demand. By the terms of the contract this refusal entitled defendant to possession. To secure this possession, she entered the house very early in the morning of September 26, 1907, and before the family had had breakfast. The house at this time was occupied by plaintiff—who was in bed sick—her daughter, Mrs. Cheshire, and two or three children, who were not out of bed. When defendant entered the house, as she testified:

" I told Mrs. Cheshire I wanted to speak to her mother, and I passed into her mother's room and sat down in a rocking chair at her head. I told her that I wanted my money, and she said that her lawyer would see to her affairs."

At this point defendant's husband, his regular hired man, and two other men specially hired for the purpose, entered the house and told Mrs. Cheshire, in tones heard by the plaintiff, "we are going to move you folks out of here today; we are going to put your stuff in the street." She said "you ain't going to," and he said "that is what we came for." Defendant, her husband and the three hired servants thereupon proceeded to carry out their plan, notwithstanding remonstrances and forcible opposition on the part of Mrs. Cheshire. They had so far completed their undertaking that they had removed from the house practically everything except the little furniture in the room where plaintiff was lying sick when they were compelled to desist by the opportune arrival of plain-

tiff's counsel. In consequence of their conduct, plaintiff was terrified and her illness was very much aggravated. She brought this suit to recover compensation. Her declaration set forth the foregoing facts and also stated that recovery was sought under the "provisions of section 11206, 3 Comp. Laws, relative to treble damages for trespass on lands." At the conclusion of the trial the court permitted plaintiff to amend her declaration by striking therefrom all reference to said section 11206 and instructed the jury to render a verdict in plaintiff's favor. Defendant appeals to this court and asks a reversal upon grounds which will be referred to in the opinion.

CARPENTER, J. (*after stating the facts*). *First.* It is contended that the trial court erred in permitting plaintiff to amend her declaration in the manner above indicated. This complaint must be overruled. It is conceded that the case made in plaintiff's declaration was not within the section 11206, 3 Comp. Laws, and defendant was not prejudiced by the amendment which was clearly authorized by section 10268, 3 Comp. Laws.

*Second.* Did the trial court err in directing a verdict in plaintiff's favor? It is contended that he did. In another controversy between these same parties we said defendant was entitled to take peaceable possession of the land in controversy. See *Murphy* v. *McIntyre*, 152 Mich. 591. The question arises, Was defendant endeavoring to take peaceable possession of this land or was her conduct prohibited by our statute prohibiting forcible entries and detainers? Section 11153, 3 Comp. Laws. That section reads:

"No person shall make any entry into lands, tenements or other possessions, but in cases where entry is given by law; and, in such cases, he shall not enter with force, but only in a peaceable manner."

It is urged that as defendant used no force to get into the house she did not violate this statute. This statute is substantially a re-enactment of an old English statute en-

acted in the fifth year of the reign of Richard II, and it has been the subject of very much litigation. We answer the contention under consideration by quoting from a recent English decision:

"Mr. Cookson says that the statute of Richard only applies to entry upon land, and that if I, who have a title, can get peaceably over the border of the land which is in the possession of a person who has no title, the possession follows the title; I am then in possession, and I may use all necessary force to put out the person who had been in possession. In my judgment that is not the law. The statute of Richard II, as I have already pointed out, prohibits an entry with a strong hand, which means, as I understand it, coming with a multitude of people or any excessive number of persons. The possession can only be taken in a peaceable and easy manner. If the operation of the statute is confined to the mere act of getting over the border, the edge, of the property in question peaceably, the statute is evidently not adequate to meet the evil which it was intended to repress, viz., the evil of persons who have a right, as well as those who have not a right, causing disturbance, inaugurating civil war, for the purpose of obtaining possession of that which is or which they claim to be their property. Accordingly, it appears to me to be clear law, and I desire to restate it, that, if an entry be made peaceably, and if, after entry made, and before actual and complete possession has been obtained, violence be used towards the person who is in possession, that is criminal within the statute of Richard II." *Edwick* v. *Hawkes*, L. R. 18 Chan. Div. 210.

To the same effect is our own decision of *Seitz* v. *Miles*, 16 Mich. 455, where it was said:

"To constitute a forcible entry within the meaning of the statute, it is not necessary that the actual invasion of the premises should at the very moment be attended by the circumstances requisite to give it the character of a forcible entry, or be accompanied by threats, actual force or violence, or any conduct which would constitute a breach of the peace; but if the entry be obtained by stealth or stratagem, or without real violence, and the party entering evinces his purpose in having entered to have been the expulsion of the party in possession, and it is followed up by actual expulsion by means of personal

threats or violence, or superior force, it will amount to a forcible entry."

The next question is this: Did the subsequent conduct of defendant, her husband and agent characterize her entry as forcible? It does not appear that actual violence was used toward the inmates of this house. But there was a superiority of numbers, a display of force calculated to intimidate and terrify them and it did terrify them.

"But the law is, where the party, either by his behavior or speech, at the time of his entry, gives those, who are in possession, just cause to fear, that he will do them some bodily harm, if they do not give way to him, his entry is esteemed forcible; whether he cause the terror, by taking with him such an unusual number of servants, or by arming himself in such a manner as plainly to indicate a design to back his pretensions by force." *State* v. *Pollok*, 4 Ired. Law (N. C.), 309.

"In this case there was, it is true, no one assaulted, nor is it necessary that there should be, to constitute a forcible entry; for, if persons either take or keep possession of either house or land, with such number of persons, and show of force, as is calculated to deter the rightful owner from sending them away, and resuming his own possession, that is sufficient in point of law to constitute a forcible entry, or a forcible detainer." *Milner* v. *Maclean*, 2 Car. & P. 18.

To constitute a forcible entry—

"It is not necessary that it should be accompanied with tumult or riot, directed against the person of the party in possession. It will be sufficient if the entry is attended with such a display of force as manifests an intention to intimidate the party in possession, or deter him from defending his rights, or to excite him to repel the invasion of his possession and thus bring about  *  *  *  a breach of the peace." *Ely* v. *Yore*, 71 Cal. 133.

It is clear that under these authorities the entry of defendant was forcible and contrary to the statute.

The next question that arises is: Did this unlawful conduct of the defendant constitute a right of action? It has been held (see *Pollen* v. *Brewer*, 7 C. B. [N. S.] 371; *Ives* v. *Ives*, 13 Johns. [N. Y.] 235) that the person evicted contrary to the forcible entry and detainer statute

cannot recover damages for being disturbed in his possession of the land. But it is also held (*Newton* v. *Harland*, 1 Man. & G. 644; *Beddall* v. *Maitland*, L. R. 17 Chan. Div. 174; *Edwick* v. *Hawkes*, L. R. 18 Chan. Div. 199) that he may recover compensation for any injuries done to himself or his personal property in the course of the eviction. This distinction which has been repudiated by very respectable authorities (see *Souter* v. *Codman*, 14 R. I. 119, and authorities there cited) seems to us sound. The evicted person cannot recover damages for injury to his possession of the land because his possession is unlawful. *Beddall* v. *Maitland*, supra. To allow him to recover in such a case would be to permit him to recover for damages to property which is not his. But very different considerations arise when he seeks compensation for injuries done to himself or to his personal property. The eviction of himself or the removal of his goods from the house is a wrongful act, made so by statute, and the damages resulting therefrom belong to him. For such a wrong there should be, and we hold there is, a right of action. Under this reasoning plaintiff was entitled to recover damages resulting to herself and to her property by the wrongful conduct of the defendant and those were the damages which she recovered in this case.

*Third.* The physician who attended plaintiff the day of the attempted eviction refused, on cross-examination, to state just what medicine he gave her, and the trial court declined to compel him to so state. It is urged that this ruling was erroneous because "his treatment might have had something to do with the subsequent condition." It is a sufficient answer to this complaint to say that, under our decision of *Reed* v. *City of Detroit*, 108 Mich. 224, this testimony would not have lessened or in any way affected defendant's liability. We think no other complaint demands discussion.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MOORE, and MCALVAY, JJ., concurred.