KITTIE FULTS, Appellant, *v.* JOHN C. MUNRO, Respondent.

Forcible entry and detainer — history of statutes relating thereto — definitions thereof — rights of parties — actions arising therefrom.

1. Origin and history of statutes in England and in this state relative to forcible entry and detainer considered.

2. To make an entry forcible the force used must be unusual and tend to bring about a breach of the peace, such as an entry with a strong hand, or a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life or limb, or under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession.

3. Although the entry was peaceable, still if a party entitled to the possession is kept out through fear of personal violence, he is entitled to recover treble damages for a forcible detainer. When deprived of possession without right, he has the right to re-enter, after dispossession is complete, if he can do so peaceably.

4. In an action at law the right to judgment depends on the facts as they stood when it was commenced, instead of, according to the rule in equity, as they stood at the date of the trial. Hence a warrant to dispossess, valid upon its face and issued pursuant to a judgment also valid upon its face, is to be regarded as valid when it was executed, although subsequently the judgment was reversed, not for want of jurisdiction but for errors committed during the trial before the magistrate.

5. One not a party to the proceeding in which the judgment was rendered is not bound thereby. | The warrant is not good as against a person in possession as assignee of a lease when there is evidence tending to show that the plaintiff in the proceeding had recognized him as lawfully in possession. He should be joined as a party to the proceeding, and it is a trespass to dispossess him without giving him an opportunity to make his defense.

6. Where summary proceedings were taken against a lessee who had, to the knowledge of the landlord, assigned the lease to his wife, who was not made a party to the proceeding, the acts of an assistant to the officer who executed the process, within the line of his authority, after the removal of the husband under the warrant, were the acts of the landlord. The fact that such assistant made such a show of force as to tend to bring about a breach of the peace and to prevent the wife from re-entering the premises, raises a question for the jury as to whether she was kept out of possession by fear of personal violence, and if so, to assess the damages sustained by her.

*Fults* v. *Munro*, 137 App. Div. 881, reversed.

(Argued March 30, 1911; decided April 25, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 27, 1909, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The material allegations of the complaint are that on the 10th of March, 1908, the defendant leased to one William Fults, the husband of the plaintiff, a farm of 240 acres, situate in the town of Camillus, county of Onondaga. The lease was in writing and provided for a term of one year from the 1st of April, 1908. The lessee agreed to market the crops and pay to the lessor as rent for the use of the premises one-half of all the proceeds of the farm. On the same day that the lease was made William Fults assigned it to his wife, the plaintiff herein, with the knowledge and consent of the defendant and thereupon with like knowledge and consent she entered into possession of the premises. She further alleged that on the 16th of July, 1908, "said defendant made forcible

entry into the lands and premises," fully describing them, and "made forcible entry to the whole of said premises and has forcibly put the plaintiff out of the possession thereof and has continued to forcibly and unlawfully hold plaintiff out of possession thereof, and by reason thereof said plaintiff has been damaged by the aforesaid acts of the defendant, his servants and agents, in the sum of $2,000 for treble which amount the plaintiff claims judgment against the defendant." The plaintiff also described the crops growing upon the premises at the time of the entry and alleged that she "was receiving profits from seven milch cows amounting to $30" per month.

The defendant by his answer admitted the execution of the lease, denied all the other allegations of the complaint and alleged that he was in possession under the judgment and warrant of a justice of the peace duly made and issued in a proceeding in which the defendant was the petitioner and William Fults, the lessee of the premises, was the defendant.

It appeared upon the trial that in July, 1908, the defendant began a proceeding before a justice of the peace · to remove his tenant, William Fults, from the premises for the non-payment of rent, but he did not make Mrs. Fults, the assignee of the lease, a party, although he knew of the assignment and had recognized her as in possession. After issue joined and a trial had in said proceeding, in which the plaintiff was sworn as a witness, judgment of dispossession was rendered in due form of law and a warrant regular upon its face issued to a constable for execution. The officer went to the premises and without using force or threats entered the dwelling house where Mrs. Fults resided and inquired for her husband. She said he was down in the lot and asked the officer what he wanted. He answered, "I have come to put you out. If you don't take your one hundred dollars and put on your things and leave, I am going to put you out." She said, "Well, I guess you won't put

me out." The defendant was not present when this
took place. Mr. Wood sat down in a chair and Mrs.
Fults after saying, "These things are mine, don't you
touch a thing in any way, shape or manner in this house,"
went out, harnessed a horse and drove to Syracuse.
When she came back with a lawyer, the officer was
removing the furniture and placing it on the opposite side
of the road in front of the house. After nearly every-
thing was out she went in to get some puppies, which she
swore belonged to her, and the officer told her she could
not have them, and, to use her own words, "He took me
by the arm and put me right off," taking her to the road,
but using no violence to speak of. After this the defend-
ant came to the premises and she heard him identify cer-
tain articles, saying "that is mine, don't take that out.
This is theirs, take that out." Household furniture,
horses, cows, wagons, farming implements and tools, all
belonging to the plaintiff, were thus removed from the
premises and put on the opposite side of the road, the
horses being tied to the fence. That night she slept on
the roadside with her things. One Lockwood, an assist-
ant of the officer, walked up and down the road with a
shot gun during the entire night. Twice after dark and
once in the middle of the night he fired the gun. He told
her to keep off of Mr. Munro's land, that he was in pos-
session, that Mr. Munro had left him to keep guard and
that she should keep off.

An appeal was taken by William Fults from the judg-
ment of dispossession to the County Court and on the 15th
of October, 1908, the judgment was modified as to the
amount of rent due and as thus modified affirmed, with-
out costs. The next day this action was commenced.
On the 13th of November following a further appeal
was taken to the Appellate Division and on the 2d of
March, 1909, the judgment of dispossession was reversed
by that court on the ground that the rent and costs were
tendered before the warrant was issued and that no proper

demand had been made. The present action was tried
in May, 1909, and when the plaintiff rested the defendant
moved for a nonsuit. The plaintiff asked to go to the
jury upon the question whether she was forcibly ejected
and detained from the premises, upon the question of the
damages sustained by her and upon all the evidence in
the case. The application of the plaintiff was denied,
the motion of the defendant granted, and the plaintiff
excepted to each ruling. Upon appeal to the Appellate
Division the judgment entered upon the verdict was
unanimously affirmed.

*Walter Welch* and *Harry H. Stone* for appellant. It
was error for the trial court to dismiss the complaint.
(*Compton* v. *Chelsea*, 139 N. Y. 538; *Waterbury* v.
*Deckelman*, 50 App. Div. 434.) The action of the con-
stable and the men helping him in forcibly putting the
plaintiff and her goods off from said premises and in
forcibly keeping her off from said premises is the action
of the defendant and he is responsible therefor. (*Hong
Sing* v. *Wolf Fein*, 33 Misc. Rep. 609.) Plaintiff is entitled
to recover treble damages in this action, and the amount
thereof was properly proven. (Code Civ. Pro. § 1669;
*Myers* v. *Sea Beach Ry. Co.*, 43 App. Div. 573; 167
N. Y. 581.)

*Thomas Woods* for respondent. The taking possession
of the premises did not constitute a forcible entry and
detainer, and this action cannot be maintained. (13 Am.
& Eng. Ency. of Law, 743; *People* v. *Field*, 52 Barb.
198; *Carter* v. *Anderson*, 16 Daly, 437; *Alexander* v.
*Griswold*, 17 N. Y. Supp. 522; *Bach* v. *New*, 23 App. Div.
548; *Marchend* v. *Haber*, 16 Misc. Rep. 322; *Lubro* v.
*Campbell*, 24 J. & S. 70; *Pharis* v. *Gere*, 110 N. Y. 336.)
No proof was made by the plaintiff upon the question of
damages that could properly have been submitted to the
jury, and there was no error in the trial court dismissing

the complaint. (*Depew* v. *Ketchum,* 75 Hun, 227; *Taylor* v. *Bradley,* 39 N. Y. 129; *Eckel* v. *Cottrell,* 24 App. Div. 496; *Dickman* v. *Hart,* 142 N. Y. 183; *Bernstein* v. *Meech,* 130 N. Y. 354; *Mack* v. *Patchin,* 42 N. Y. 169; *Kelley* v. *Sheehy,* 17 J. & S. 518; *Denison* v. *Ford,* 7 Daly, 384; *Noyes* v. *French Lumber Co.,* 80 Minn. 397; *Saunders* v. *Thornton,* 2 Ind. Ter. 92.)

VANN, J. Statutes relating to forcible entry and to forcible detainer, which are separate and distinct wrongs, have existed for centuries. The earliest, passed in 1381, provided that "None from henceforth make any entry into lands and tenements but in cases where entry is given by the law, and in such case not with strong hand nor multitude of people but only in peaceable and easy manner; and if any man from henceforth do to the contrary, and thereof be duly convicted, he shall be punished by imprisonment of his body, and thereof ransomed at the King's will." (5 Ric. II, ch. 7; Pollock on Torts [6th ed.], 368.) Later( the provisions of the statute were extended to forcible detainer)(8 Henry VI, ch. 9) and since then legislation upon the subject in England and in this country has usually been addressed to both forcible entry and forcible detainer and except in one or two states the offenses are still distinct.

As time passed many changes were made and various remedies, both civil and criminal, provided, including the recovery of treble damages. The Revised Statutes contained the provision that "If any person be disseized, ejected or put out of any lands or tenements, in a forcible manner, or being put out, be afterwards holden and kept out by force, or with strong hand, he shall be entitled to maintain an action of trespass, and shall recover therein treble the damages assessed by the jury or by a justice of the peace, in cases provided by law." (2 R. S. part 3, chap. 5, title 6, § 4.) The Code of Civil Procedure provides that "if a person is disseized, ejected, or put out of real

property, in a forcible manner ; or after he has been put out, is held and kept out, by force, or by putting him in fear of personal violence, he is entitled to recover treble damages, in an action therefor against the wrongdoer." (Code Civ. Pro. § 1669.)

Under the head of summary proceedings to recover the possession of real property the Code further provides that "An entry shall not be made into real property, but in a case where entry is given by law ; and, in such a case, only in a peaceable manner, not with strong hand, nor with multitude of people. A person who makes a forcible entry forbidden by this section, (or who, having peaceably entered upon real property, holds the possession thereof by force,) and his assigns, under tenants, and legal representatives, may be removed therefrom, as prescribed in this title." (Id. § 2233.) It is provided by the Penal Code that "A person guilty of using, or of procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any lands or other possessions of another) except in the cases and the manner allowed by law, is guilty of a misdemeanor." (Penal Code, § 465.)

As this is an action at law the right to judgment depends on the facts as they stood when it was commenced, instead of, according to the rule in equity, as they stood at the date of the trial. (*Sherman* v. *Foster*, 158 N. Y. 587, 593, and cases cited.) Hence, the warrant to dispossess, being valid upon its face and having been issued pursuant to a judgment also valid upon its face, is to be regarded as valid when it was executed, although subsequently the judgment was reversed, not for want of jurisdiction but for errors committed during the trial before the magistrate. Mrs. Fults, however, was not a party to the proceeding in which the judgment was rendered, so that she was not bound thereby and the warrant was not good as against her. She was in possession as assignee of the lease and there was evidence tending to show that the defendant had recognized her as lawfully in posses-

sion. She should have been joined as a party to the proceeding and it was a trespass to dispossess her without giving her an opportunity to make her defense. As was said by Judge VAN HEUSEN in *Croft* v. *King* (8 Daly, 265, 268): "She might have paid the rent to protect her possession, or she might have taken a valid objection to some of the landlord's proceedings. At any rate, the statute gave her a right to a hearing; and the landlord ought to answer in damages for the wrong." The following cases cited by the learned judge amply sustain his position: *Sims* v. *Humphrey* (4 Den. 185); *Hill* v. *Stocking* (6 Hill, 314); *Starkweather* v. *Seeley* (45 Barb. 164); *Savacool* v. *Boughton* (5 Wend. 170). (See, also, *Colt* v. *Eves*, 12 Conn. 243, 259; *Kendall* v. *Doctor*, 4 How. Pr. 447.)

While the warrant would be no protection as against an action for simple trespass brought by her, it has an important bearing upon the question of forcible entry. At common law and prior to the statutes to prevent forcible entry and detainer, if a lawful right of entry existed the person entitled to possession was justified by law in regaining possession by force. (*Hyatt* v. *Wood*, 4 Johns. 150, 157; 2 Hawk. P. C. 64.) The present statutes upon the subject are the re-enactment of a long series of laws for the primary purpose of preventing landlords from taking the law into their own hands and ejecting tenants by violence, although they also apply to some other cases. The civil action to recover treble damages is penal in nature and its object is to redress the forcible and wanton violation of the right to the possession of real estate.

The expression "in a forcible manner," as used in the statute, does not mean any kind of force, such as is involved in a mere trespass. Thus, as was held in a leading case after a careful review of the authorities: "The entry or detainer must be riotous; or personal violence must be used; or there must be threats or menaces of violence; or other circumstances must exist inducing alarm

or terror in the occupant of the premises." (*Willard* v. *Warren*, 17 Wend. 257.) As was said in another case which has frequently been cited: "It has always been held that to make an entry forcible, it ought to be accompanied with some circumstances of actual violence or terror; and, therefore, an entry which hath no other force than such as is implied by the law in every trespass whatsoever, is not within these statutes." (*People ex rel. Niles* v. *Smith*, 24 Barb. 16, 18.)

The force used must be unusual and tend to bring about a breach of the peace, such as an entry with a strong hand, or a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life or limb, or under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession. (*Pharis* v. *Gere*, 110 N. Y. 336, 345; *People ex rel. Kline* v. *Rickert*, 8 Cow. 226 ; *Waterbury* v. *Deckelmann*, 50 App. Div. 434; *Bach* v. *New*, 23 App. Div. 548; *Labro* v. *Campbell*, 24 J. & S. 70; *Milner* v. *McClean*, 2 Car. & P. 17; 1 Hawkins Pleas of the Crown, ch. 28, §§ 26, 27; Wharton Criminal Law, §§ 2033, 2034; 1 Bishop Cr. Law, § 397; 3 McAdam's Landlord & Tenant [3d ed.], 187.) As was said by Judge FOLGER in *Wood* v. *Phillips* (43 N. Y. 152, 157): "The main object still is to preserve the public peace and prevent parties from asserting their rights by force or violence, though by gradual additions the remedy has become in effect a private as well as a public one."

The entry itself in this case, leaving out of view for the present the detainer, was not made in a forcible manner within the meaning of the statute as read in the light of the authorities. Actual entry was made without force or the display or threat of force of any kind. After such entry the plaintiff of her own accord left the premises and went off to get legal advice. The mere statement of the officer, made with the warrant in his hands, that he

had come to put her out and that if she did not put on her things and leave he was going to put her out, with no threat to injure, or any overt act, did not make the entry forcible. While she did put on her things and leave, it was not through fear, but to procure a lawyer. She apprehended no danger, but held her own well in the conversation with the officer. Nothing occurred to suggest a breach of the peace. Moreover, the officer did not go there wantonly and with no semblance of right, but was armed with process valid against William Fults, the lessee named in the lease, the husband of the plaintiff and an actual occupant of the premises, although as the hired man of his wife, but invalid as to herself. The warrant commanded him " to remove all persons from the said property and to put the said petitioner into full possession thereof." It followed the language of the statute, which, however, does not mean literally all persons, but only those in actual possession who are made parties to the proceeding and their guests, agents, servants and the like. (*Croft v. King, supra.*) While the warrant under the facts recited therein did not upon its face authorize the officer to remove Mrs. Fults, the form of the command gave him color of authority to do so and saved him from the imputation of willful and reckless conduct such as is necessary to support an action of this character. The primary question in such cases is not who had title to the land but who had the right to possession; and the next, not whether the entry was made without right, but whether it was made with such force or threats as to disturb the public peace. While the defendant had no right to possession when he entered, as the entry was not made by force or through fear, it was not an entry in a " forcible manner " within the meaning of the statute.

Although the entry was peaceable, still if the plaintiff was kept out through fear of personal violence, she was entitled to recover treble damages for a forcible detainer. After the dispossession was complete she had the right to

B

re-enter if she could do so peaceably, for she had been deprived of possession without right. (*Bliss* v. *Johnson*, 73 N. Y. 529.) Neither the officer nor the defendant had any authority to prevent her if she attempted to, or to keep her out by threats or a display of force. As she was put out wrongfully she had the right to get in again if she could, and whoever prevented her by menace or intimidation was guilty of forcible detainer. Referring to that subject, Chief Justice SAVAGE said in *People ex rel. K line* v. *Rickert* (*supra*): "The law is that the same circumstances of violence or terror which will make an entry forcible, will make a detainer forcible also; and whoever keeps in the house an unusual number of people, or unusual weapons, or threatens to do some bodily hurt to the former possessor if he dare return, shall be adjudged guilty of a forcible detainer though no attempt be made to re-enter." (p. 232.)

Threats may be made by acts as well as words. There was some evidence tending to show that Lockwood, the officer's assistant, had been stationed on the premises by the defendant with instructions to guard them and keep the plaintiff off, and whatever Lockwood did within the line of this authority the defendant did. (*Welsh* v. *Cochran*, 63 N. Y. 181; *Newberry* v. *Lee*, 3 Hill, 523, 525; *Brown* v. *Feeter*, 7 Wend. 301.)

Mrs. Fults testified that she saw Lockwood "there with Wood carrying the stuff out," and that she saw him there while the defendant was on the premises. When asked what Lockwood was doing there that night she answered, "Why, he kept walking back and forth in front of our things, and ordering us and threatening and pointing a gun and such things." Later, on being recalled by the plaintiff, in answer to a similar question she said that Lockwood "kept walking up and down, walking up and down, and during the night he fired that gun three times, while I was living on the opposite side of the road," twice shortly after dark and once in the middle of the night. During

the night he told her "to keep off of that side of the road. * * * He said to keep off of Mr. Munro's land. That he was in possession. That Mr. Munro had left him to keep guard and for me to keep off."

The officer's aide, with a loaded gun on his shoulder, marching through the night up and down on one side of the road in front of the plaintiff sitting with her effects on the other side, and at intervals firing the gun, was such a personification of force as naturally to inspire fear. His actions spoke louder than words with the meaning, as the jury could have found, that if she attempted to regain possession or enter the house she would sustain bodily harm. Moreover, threatening words were used, although what they were does not appear and the gun was pointed, but at whom and under what circumstances was not disclosed. There was at least such a show of force as to strongly tend to bring about a breach of the peace and to prevent the plaintiff from attempting to re-enter.

All the evidence taken together, if believed by the jury, would have authorized them to find the defendant guilty of forcible detainer, not committed by himself in person, but by an agent for whose acts in the line of guarding the premises and keeping the plaintiff off he was responsible. A case was made for the jury and as there was some evidence, although slight, on the question of damages, the motion to nonsuit was improperly granted. After hearing the defendant and his witnesses, whose version of the facts has not yet appeared, it will be for the jury to say whether the plaintiff was kept out of possession through fear of personal violence, and if so to assess the damages sustained by her.

The judgment of nonsuit should be reversed and a new trial granted, with costs to abide event.

CULLEN, Ch. J., GRAY, HAIGHT, WILLARD BARTLETT and COLLIN, JJ., concur; CHASE, J., not voting.

Judgment reversed, etc.