## HAMMOND SAVINGS AND TRUST COMPANY *v.* BONEY.

[No. 8,384.  Filed January 8, 1915.  Rehearing denied June 24, 1915. Transfer denied March 17, 1916.]

1.  LANDLORD AND TENANT.—*Rights of Tenant.*—*Knowledge of Prior Lease.*—The occupant holding over after the expiration of his term and claiming some new right in the premises by virtue of an alleged oral understanding had with the owner after actual and constructive knowledge that the latter had leased to another, could not successfully maintain such right against the lessee.  p. 299.

2.  EVIDENCE.—*Affidavits.*—*Conclusiveness.*—*Admissions.*—An affidavit filed by the occupant of premises in aid of a motion to dissolve a restraining order against him further holding possession, asserting that his right to occupy the premises after the expiration of the lease was extended to February 1, 1910, was binding upon him as an admission in a subsequent action for forcible entry and detainer.  p. 299.

3.  FORCIBLE ENTRY AND DETAINER.—*Statutes.*—*Construction.*— "*Or*".—"*And*".—The word "or" should be read as "and" in the first relative clause of §8083 Burns 1914, §5237 R. S. 1881, providing that "any person who shall make unlawful or forcible entry into lands, and shall either peaceably or forcibly detain the same against any person having the right to possession thereof; or any person having peaceably obtained the possession of lands, who shall unlawfully and forcibly keep the same against any person having the right to possession thereof, may be ousted from such premises", etc.  p. 303.

4.  FORCIBLE ENTRY AND DETAINER.—*Statutory Provisions.*—*Scope.* —Only persons having right to possession of the lands involved come within the protection of the forcible entry and detainer statute (§8083 Burns 1914, §5237 R. S. 1881), and under its provisions, the possession can not be changed against the person who actually has it under a claim of right, without the intervention of legal procedure.  p. 304.

5.  FORCIBLE ENTRY AND DETAINER.—*What Constitutes.*—A forcible entry or a forcible holding is more than a mere trespass, and to constitute such entry or holding, possession must have been taken or kept either by actual violence or by such show of force as was reasonably calculated to intimidate the rightful owner.  p. 305.

6.  LANDLORD AND TENANT.—*Forcible Entry.*—*What Constitutes.*— *Force Required.*—While the act of a landlord and his new lessee, on the alleged termination of the lease and right to possession of an occupying subtenant, in entering the premises in the absence of the latter, by prying boards off a trapdoor in the floor over a cellar to which the landlord had access, did not in itself amount to a forcible entry as defined by §8083 Burns 1914, §5237 R. S. 1881, yet such method of entrance, coupled with the fact that it was for

the purpose of obtaining possession as against one who was holding under a claim of right, and the further facts that they promptly proceeded to barricade the doors and placed on guard a special policeman bearing the indicia of authority, who protected the premises against reëntry until arrested at the instance of the subtenant, who immediately instituted legal proceedings, constituted a forcible entry within the meaning of the statute. p. 306.

7. LANDLORD AND TENANT.—*Recovery of Possession.*—*Process of Law.*—The rule that a landlord, entitled to immediate possession through expiration of the term, may take such possession by force and will incur no civil liability except for excessive force, has no application to cases where such possession is obtained in violation of the forcible entry and detainer statute; and an entrance under circumstances amounting to a forcible entry, though made in reliance on the provision of a lease entitling the landlord to enter, take possession and expel the occupant without in any way being a trespasser, created a liability under §8083 Burns 1914, §5237 R. S. 1881, defining forcible entry and detainer. p. 310.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action between Mathias Boney and the Hammond Savings and Trust Company. From a judgment for the former, the latter appeals. *Affirmed.*

*W. J. Whinery,* for appellant.

*McMahon & Conroy* and *McAleer Bros.,* for appellee.

CALDWELL, P. J.—It is conceded by appellant that the only questions presented on this appeal are that the decision and finding of the court are not sustained by sufficient evidence, and are contrary to law. There is no great conflict in the evidence. The radical difference between the parties is respecting its legal effect. The facts are substantially as follows: On January 1, 1907, and at all other times mentioned in the record, Anton H. Tapper was the owner of a certain business block in the city of Hammond, consisting of three stories and a basement; on said day, Tapper, by an instrument in writing, leased the ground floor of said block to

The McAvoy Brewing Company of Chicago for a term of three years, ending January 1, 1910. In February, 1907, the brewing company, by parol, and with the consent of Tapper, sublet the room to appellee, who thereupon entered into possession, and used it in the business of operating a saloon for the retail of intoxicating liquors. The fixtures and furnishings were owned by the brewing company. The lease so executed to the brewing company contained the following provisions:

"At the expiration of this lease, or on failure to pay rent when same is due, or on failure to comply with any of the conditions of this lease, the same shall terminate at once, without notice, and the said Anton H. Tapper, his representatives and. assigns may enter on and take possession of said premises, and expel the occupant thereof, without in any wise being a trespasser, and a failure of said Anton H. Tapper to take possession of said premises at the time aforesaid, shall not estop him from afterwards asserting said rights, and the occupation of said premises by the said tenant after the expiration of said lease, or the forfeiture thereof, shall give him no rights as tenant, but he may be expelled at any time without notice."

At the time of the execution of the lease, Tapper endorsed on the back of it his signed consent that the room might be sublet at any time within the granted term. On July 8, 1909, Tapper executed to appellant an instrument in writing, by which he leased the room to appellant for a term of ten years, commencing January 1, 1910, to be used in conducting a banking and trust company business. This lease was properly executed and acknowledged before a notary public, and was duly recorded in the recorder's office of Lake County, on July 27, 1909. Prior to January 1, 1910, Tapper notified the brew-

ing company by letter that he expected the room to be surrendered at the expiration of the company's lease on January 1, 1910. Appellee apparently had knowledge that such notice had been given, and prior to said date negotiated with Tapper and the company with a view to leasing another room owned by the former, and on which the latter apparently had some claim. The question of the procuring of such other room by appellee remained in doubt for sometime, and resulted finally in its being leased to another party. Appellee insisted that he had made some sort of an arrangement by which he was to occupy the room in question after January 1, 1910. He claimed that when the brewing company sublet the room to him, its agent stated that he might occupy it indefinitely if the rent was paid. He had actual as well as constructive knowledge of the execution of the ten-year lease to appellant, but did not claim that any arrangement was made with appellant for the occupancy of the room by him after January 1. At the trial, appellee testified that Tapper in January, 1910, gave him permission to occupy the room after the first of that month. The brewing company refused to accept the installment of rent for January, and thereupon on two occasions, appellee tendered such installment to Tapper, who refused it. There was evidence that in January, Tapper, on several occasions, demanded that appellee vacate the room. Appellee's somewhat cloudy claim to the right to occupy the room is made rather more definite by an affidavit filed by him in this proceeding, in support of his motion to dissolve a temporary restraining order, hereinafter mentioned, wherein he stated in substance that after January 1, 1910, he was in possession of the room pursuant to an oral agreement made with the brewing company and a subsequent oral agreement

made with Tapper; that by the former he leased the room from the brewing company for three years, with the privilege of five "according to the terms of the lease made by and between the said Anton H. Tapper, the owner thereof, and the said McAvoy Brewing Company"; that having later ascertained that the lease to the brewing company was only for the term of three years, and consequently that the company did not have the power to sublet the room for a longer term, there was an agreement made between him and Tapper, by which they would arrange "as between themselves for the rent of the premises until the first day of February, 1910", being the time of the expiration of his county license to retail intoxicating liquor.

Before proceeding further with the statement of facts, it will be well to determine appellee's position relative to the room, and his right in the 1. premises after January 1, 1910. The lease to the brewing company was for the definite term of three years, terminating January 1, 1910, at which time it expired without notice. §8059 Burns 1914, §5213 R. S. 1881. The brewing company could not transfer to appellee any greater interest in the room than it held of Tapper, and hence appellee's term held of the company could not extend beyond January 1, 1910. In that month, when appellee apparently claims that he procured some new right in the premises by virtue of an oral understanding with Tapper, he had both actual and constructive knowledge of the lease executed by Tapper to appellant, and hence any such new right was subject to the lease last named, and could not be successfully maintained as against appellant. Moreover, by the affidavit filed in aid of the motion to dissolve the restraining order, 2. appellee asserted under oath that such new right, if any, extended only to February 1,

1910. Such assertion is binding on appellee as an admission in this proceeding. *Templer* v. *Lee* (1914), 55 Ind. App. 433, 103 N. E. 1090. It follows that at least after February 1, 1910, appellee's right to hold the room had terminated, and that at such time, if not before, a proper proceeding to oust him could have been successfully maintained. The evidence is not strong enough, however, to warrant us in holding that appellee was actuated by bad faith in endeavoring to hold possession of said room. No such proceeding was brought. On the contrary, continuing our statement of facts, on or about February 1, said brewing company removed the fixtures from said room, under a writ of replevin, leaving certain personal property belonging to appellee, consisting of barrels and kegs containing liquor, an assortment of bottles, chairs, linoleum, cigars, etc. In the early part of February, appellee was not regularly at his place of business. He was there a portion of each day, and always in the evening. There is some confusion in the record as to when his license expired. He states in the affidavit that it did not expire until February 1. At that time he had pending an application for a license to retail liquors, describing the room as the location. He had in the room, cigars, tobaccos, etc., for sale. He and his clerk each carried a key to the room. Tapper at all times retained possession of the basement under the room. In the forenoon of February 4, Tapper had seen appellee in the room, and later he and his attorney, with a Mr. Hammond, who was appellant's secretary, met by appointment, and proceeded to the room. Finding both the front and rear doors locked, and no one in the room, they proceeded into the basement through an outside door, and thence up an abandoned stairway, forcing off several boards from a trapdoor, and thus entered

the room. Tapper then made the statement that he now turned the room over to Hammond. They braced the front door, and Tapper, through the chief of police, procured as watchman for the room a Mr. Boles, who by reason of his size was popularly known as "Big Jess", and who sometimes served as a special policeman. Tapper and Hammond placed Boles in the room with a star displayed on his clothing, and directed him to admit no one except as directed by them. Tapper subsequently paid Boles for his services. Boles went on guard in the forenoon, and thereupon certain workmen, called by Hammond, proceeded to tear up the floor and Tapper removed some partitions, preparatory to rearranging the room for banking purposes. Tapper engaged a drayman to remove appellee's property and place it in storage. About two o'clock, appellee learned of the occurrences, and came to the room. Failing to gain admittance by the front door by reason of its being braced, he went to the rear door, where the drayman was loading his property. Appellee attempted to enter by the rear door, but was informed by Boles that he could not come in. On appellee's persisting, Boles, forcibly pushed him away from the door and prevented him from entering. Appellee then having consulted a lawyer, procured to be issued, on a charge of trespass made by him, what are called "John Doe warrants". In the meantime Boles had braced the back door also. Shortly thereafter, a constable bearing the warrants, and accompanied by appellee and several other persons, two of whom had revolvers in their possession, demanded admission at the rear door, for the purpose of serving the warrants. Boles refused to admit them. The outside parties then procured a gas pipe, and with it forced the door open against the resistance of Boles, who was

thereupon arrested and taken before a justice of the peace. Certain workmen who were at the time in the room, and who were under contract with appellant to do work in remodeling the room, escaped through a basement window, but were subsequently arrested. The workmen declined to return to their work until after a restraining order was issued in this case. The persons arrested have not been tried, but there was some evidence of an agreement that prosecution should await the event of this action. The arrests having been made, appellee took possession of the room, and caused his property to be returned to it. There was no evidence that appellee at the time this action was commenced was holding such possession by a display of force other than the moral effect of his presence in the building, and the fact that such arrests had been made. On February 8, appellant commenced this action. The complaint alleges the execution and recording of the lease under which it claims; the delivery of possession to it by Tapper; that it proposed to use the room for banking and trust company purposes; that it had entered into contracts aggregating several thousand dollars for the repair of the room, the beginning of work under such contracts, the interruption of such work, and the expulsion of the persons engaged thereat by appellee, by means of threats and arrests on alleged charges of trespass; appellee's intimidation of the workmen by lingering in and about the room; that appellee has no right, title or interest in or to the room, and that the arrests were made in bad faith. Prayer for a restraining order, and for a permanent injunction on a hearing. The court issued the restraining order as prayed for, and March 4, over appellee's verified motion to dissolve such restraining order, the court continued it until final hearing as a temporary

injunction.   Afterwards the venue of the cause was changed to the Porter Superior Court, where a trial resulted in a judgment in favor of appellee.

As we have indicated, appellee, at the time when Tapper and appellant, through its said secretary, entered the room, and declared themselves to be thereby in possession of the same, was wrongfully holding over, at least in the sense that by a proper proceeding he could have been ousted.   We do not understand that appellee combats the foregoing proposition.   He seems to concede that under the case developed by the evidence, he was at most but a tenant at sufferance, with a possession that he could not have successfully maintained as against such a proper proceeding.   He contends, however, that whatever possession Tapper and consequently appellant obtained was in violation of the forcible entry and detainer statute, and that under such statute, he was entitled to be restored to such possession; that appellant's possession was characterized as wrongful by reason of the manner in which it was obtained, and that consequently appellant can not defend such possession or protect itself in it by recourse to an equitable proceeding.   In our judgment, if appellee's premise is sound, his conclusion is inevitable.

The forcible entry and detainer statute is as
3.   follows:  "Any person who shall make unlawful or forcible entry into lands, and shall either peaceably or forcibly detain the same against any person having right to possession thereof; or any person having peaceably obtained the possession of lands, who shall unlawfully and forcibly keep the same against any person having right to possession thereof—may be ousted from such premises, and the possession thereof restored to the person entitled to the same, and damages for retention recovered on complaint by him made, in the same

manner as provided in the case of tenants holding over". §8083 Burns 1914, §5237 R. S. 1881. The word "or" in the first relative clause of said statute should be read as "and". *O'Connell* v. *Gillespie* (1861), 17 Ind. 459; *Tibbetts* v. *O'Connell* (1879), 66 Ind. 171; *Burgett* v. *Bothwell* (1882), 86 Ind. 149. It will be observed that only persons "having right to possession" of the lands involved come within the protection of the statute. In discussing the scope of the meaning of the quoted phrase, Mitchell, J., in *Judy* v. *Citizen* (1885), 101 Ind. 18, arrives at the conclusion that "where one is in the actual peaceable possession of lands, under a claim of right, such possession of itself gives him, as against any person entering or seeking to enter by force upon a possession so had, the right to possession", and consequently that such a person comes within the protection of the forcible entry and detainer statute. It is also held by such decision that "Under this statute, the possession can not be changed against the person who actually has it, under claim of right, without the intervention of legal procedure".

In the case at bar, appellee was in the peaceable possession of the room up to February 4, under a claim of right, and the evidence is not sufficient to indicate that such claim of right rested in bad faith. It follows that the mere fact that Tapper owned the legal title to the room, or that the actual right to the possession, as it might be determined by a legal investigation, rested in him or appellant, did not, under the terms of the statute, justify a forcible invasion of appellee's possession. If there was such a forcible invasion, appellant as a participator in it, and as the beneficiary of its fruits, was in the wrong in the beginning of this action, and as a consequence, he could not prevail in this proceed-

ing. *Schwinn* v. *Perkins* (1910), 79 N. J. L. 515, 78 Atl. 19, 32 L. R. A. (N. S.) 51, 21 Ann. Cas. 1223; *Peele* v. *State* (1903), 161 Ind. 378, 68 N. E. 682. The broad language used in *Judy* v. *Citizen*, *supra*, that "Under this statute, the possession can not be changed against the person who actually has it, under claim of right, without the intervention of legal procedure" must be understood as applying to a case where such person insists on maintaining the possession, and in order to deprive him of it, recourse either to force or to a proper legal procedure is necessary. It would seem apparent that where the landowner is wrongfully held out of possession by one without right in the premises, he may, when the opportunity presents itself, gain a possession in fact peaceable and by peaceable means, and that the necessity for recourse to legal procedure would exist only where peaceable means fail and force would otherwise be necessary. *Scott* v. *Willis* (1890), 122 Ind. 1, 23 N. E. 786.

The first question for determination, therefore, is whether in the case at bar, there was a forcible invasion of appellee's right, within the meaning of the statute, and first as to the manner of entering said room while appellee was temporarily absent. "A forcible entry or a forcible holding means more than a mere trespass. The force must be actual. The possession must be shown to have been taken or kept either by actual violence, or by such a show of force as was reasonably calculated to intimidate the rightful owner." *Archey* v. *Knight* (1878), 61 Ind. 311. See, also, *Gipe* v. *Cummins* (1889), 116 Ind. 511, 19 N. E. 466. "There must be some *actual violence*, or some proceeding, as a *large assembly of persons*, calculated to create *alarm*, if not *terror*, in ordinary minds, though

it is not necessary that there should be any assault or battery." *Boxley* v. *Collins* (1837), 4 Blackf. 320. "It must be accompanied by some circumstance of terror or violence to the person unless the entry is riotous or tumultuous, and endangers the public peace." *Smith* v. *Reeder* (1892), 21 Or. 541, 28 Pac. 890, 15 L. R. A. 172. "There must be something of personal violence or a tendency to, or threats of personal violence, unless the entry or detainer is riotous." *Willard* v. *Warren* (1837), 17 Wend. (N. Y.) 257.

In the case at bar, the persons involved proceeded quietly to the room, and ascertaining or knowing that appellee was absent, and that the doors 6. were locked, they passed through a door into the basement, of which Tapper had possession, and thence into the room by forcing some boards that constituted a part of a trapdoor. There was no display of force or of weapons, no public clamor, and no force in fact, save that which was applied to the boards. Such force constituted no more than a mere trespass. If such an entry, considered alone, should be held to be a forcible entry, within the meaning of the statute, it would follow that the unlocking of a door, or the mere turning of a latch, in order to gain entrance to a building, or the unlocking of a gate, or the opening of a fence in order to gain an entrance onto lands, is also a forcible entry, since the illustrative cases differ from the case presented only respecting the amount and kind of force used. Within the meaning of the statute, an act, to be forcible, must be such as does, or that reasonably may be expected to act on the person, or it must be so tumultuous in its nature as to constitute, or to have a tendency to a breach of the peace. We hold that the manner of entry was not forcible within the meaning of the statute. We next turn

our attention to the proposition of whether such an entry amounted to a completed act, and being peaceable in nature, whether thereby a case is presented of one entitled to possession who has peaceably taken it, or whether it, with subsequent occurrences, constituted but one transaction, and that the whole must be looked to in order that any part may be characterized. Appellee's prior possession being peaceable, is presumed to have been rightful. Cooley, Torts (2d ed.) 383. Although appellee was at the time temporarily absent, and, therefore, not in the personal occupancy of the room, nevertheless his presumed rightful possession continued. It is also true that personal occupancy as attained by appellant, did not necessarily amount to possession. *Schwinn* v. *Perkins, supra*. If appellant's rights and liabilities here must be measured by the nature of the mere act of entering the room, and disassociated from the subsequent events, the same result would follow in case appellee had merely been standing on the sidewalk outside the room, or if he had actually been in the room, when Tapper and appellant entered, even had they entered through an open door with the intention of depriving appellee of possession. A surreptitious entry against a person in peaceable possession, who has no intention of relinquishing it, has a natural tendency to provoke a breach of the peace, as soon as such person acquires knowledge of the facts. Such a breach of the peace so caused, and following rapidly on the heels of the act of entering, or the transaction of it being quelled by a display of force can not be separated from the provoking cause, and is among the evils intended to be remedied by the forcible entry and detainer statute. *Judy* v. *Citizen, supra;* *McIntyre* v. *Murphy* (1908), 153 Mich. 342, 116 N. W. 1003, 15 Ann. Cas. 802. Doubtless where the

lawful owner of a building enters it under a claim of right in the absence of the person rightfully in the possession of it, and thereupon bars the doors, stations guards, etc., and on the return of such other person, refuses him entrance, and such other person expressly or impliedly acquiesces in the possession of such owner, such possession would ripen into such a lawful and peaceable one as could rightfully be defended. But "if a person enter upon land in the actual and peaceable occupation of another, the possession which he acquires can not be deemed to be peaceable during the time when it has to be protected by firearms, or other demonstrations of force, against an attempted or threatened reëntry of the former occupant, who manifests to the intruder, by his words or acts, that he intends to reënter at the earliest moment when he can do so without violence, and who is only prevented from entering by an exhibition of firearms, or threats and menaces. Such a possession can not justly be said to be 'peaceable' in any sense, and certainly not in the sense of the statute." *Bowers* v. *Cherokee Bob* (1873), 45 Cal. 495.. See, also, *Wilson* v. *Campbell* (1907), 75 Kan. 159, 88 Pac. 548, 8 L. R. A. (N. S.) 426, 121 Am. St. 366, note, 384, 12 Ann. Cas. 766. "To constitute a forcible entry within the meaning of the statute, it is not necessary that the actual invasion of the premises should at the very moment be attended by the circumstances requisite to give it the character of a forcible entry, or be accompanied by threats, actual force or violence, or any conduct which would constitute a breach of the peace; but if the entry be obtained by stealth or strategem, or without real violence, and the party entering evinces his purpose in having entered to have been the forcible expulsion of the party in possession, and it is followed up by actual expulsion

by means of personal threats or violence, or superior force, it will amount to a forcible entry." *Seitz* v. *Miles* (1868), 16 Mich. 455. See, also, *McIntyre* v. *Murphy, supra; Mason* v. *Hawes* (1884), 52 Conn. 12, 52 Am. Rep. 552; 2 Tiffany, Landlord and Tenant §216. In the following the transaction of entering is treated as including both the act of attaining a disputed possession by stealth, and the subsequent act of maintaining it by force; *Schwinn* v. *Perkins, supra; Wilson* v. *Campbell, supra; Page* v. *Dwight* (1897), 170 Mass. 29, 48 N. E. 850, 39 L; R. A. 418; *Bell* v. *Longworth* (1855), 6 Ind. 273. *Evill* v. *Conwell* (1828), 2 Blackf. 133, 18 Am. Dec. 138.

Here the entry was made without the knowledge or consent of appellee, and while he was temporarily absent from the room. Had he been present in the room, and had he promptly offered resistance to the invaders as they were making the entry, or as soon as they gained occupancy, and had they overcome and expelled him from the room by violence, it could not consistently be maintained that such an entry was peaceable. The conduct of the invaders indicated that they expected a contest. They proceeded promptly to barricade one door, and placed on guard at the other a watchman bearing the indicia of legal authority. As soon as appellee learned that Tapper and others were occupying the room, he attempted to recover or regain whatever actual possession he had lost. He was promptly and forcibly expelled, as testified to by Boles. The entire transaction we hold to have been a forcible entry within the meaning of the statute. It was reasonably calculated to provoke an encounter, or to lead to a breach of the peace that might have been serious in its consequences. It matters not whether appellee was justified in his subsequent conduct.

If, in procuring the John Doe warrants to be issued, and the persons to be arrested, on a charge of trespass, he did not pursue the proper legal remedy, or if he acted in bad faith, so as to place himself in conflict with the principle announced by *Tibbetts* v. *O'Connell, supra,* none of which do we decide (see, *Fults* v. *Monro* [1911], 202 N. Y. 34, 95 N. E. 23, 37 L. R. A. [N. S.] 600, Ann. Cas. 1912 D 870), still his conduct, if wrongful, did not justify appellant in its prior act of gaining possession of the room in violation of the statute. Appellant, being in the wrong, can not be protected in his possession so gained, or have such possession restored to him by an appeal to equity. Such cases as *Page* v. *Dwight, supra,* and *Smith* v. *Reeder, supra,* in the final conclusion reached, are apparently not in harmony with the views of this court. These cases, however, are decided under statutes that differ in their provisions from our statute, and it is possible that the conflict between them, and our views is only apparent rather than real.

Appellant's brief includes a number of quotations and citations of authority, of which the following from the 24 Cyc 1394, is a fair sample: "The rule supported apparently by the weight of authority is that where the landlord has become entitled to immediate possession of the premises through the expiration of the term, he may take such possession by force, without incurring civil liability, in case no more force than is reasonably necessary is employed." The subject-matter of such quotation is liability to an action for trespass, assault and battery and the like, rather than liability under the forcible entry and detainer statutes. That such is the case appears in that immediately following said quotation is the language: "and although he may be subject to punish-

ment criminally under statutes relating to forcible entry and detainer." By the common law, the owner of lands in the actual possession of another person was permitted to oust such other person by force, and without recourse to any legal procedure, if such owner was in fact entitled to the possession of such lands. Experience taught, however, that many evils grew out of such permissible practice. Thereby a landlord became his own judge as to whether under a given state of facts he was entitled to possession, and having pronounced judgment in his own favor, he was authorized to execute it by force, and in so doing he incurred no peril, in case his judgment on investigation turned out to be correct. The disputes respecting the right to possession led to commotion, turmoil and breaches of the peace, and to correct these evils the forcible entry and detainer statutes of England and of the various states were enacted. *Judy* v. *Citizen, supra.* Where a person, in violation of the terms of these statutes is forcibly ousted from the possession of real estate, or where under the terms of some of them such possession is forcibly detained from him, by recourse to the remedy afforded by such statutes, the possession of such real estate may be restored to him. The remedy is purely statutory, and, as is usual, if not universal in such cases, the person may avail himself of the statutory remedy only by moving in harmony with the procedure outlined by it. "A person wrongfully in possession, and dispossessed by the owner of the property having a right of entry, and no excessive force being used in asserting it is not entitled to maintain any other action than is afforded for a forcible entry under the code. He was not entitled to maintain, under such circumstances, any action whatever under the common law, and the common-law rule has only been changed in this state to the

extent, and no further, that the code affords him a remedy under its provisions referred to which he otherwise would not have." *Walker* v. *Chanslor* (1908), 153 Cal. 118, 94 Pac. 606, 126 Am. St. 61, 17 L. R. A. (N. S.) 455. The distinction made by the supreme court of California in the case last cited is recognized in *Moyer* v. *Gordon* (1888), 113 Ind. 282, 287, 14 N. E. 476. See, also, *Vinson* v. *Flynn* (1897), 64 Ark. 453, 43 S. W. 146, 46 S. W. 186, 39 L. R. A. 415. It follows that where the landlord is in fact entitled to possession, and he dispossesses the tenant under circumstances that give the tenant a remedy under the forcible entry and detainer statute, if the latter elects not to pursue such remedy, but rather sues in tort, as for the trespass, assault and battery, or the like, the landlord is liable in such form of action only for excess of force. In the following cases, several of which, with others of a like nature are cited in appellant's brief, while many sound principles are announced and discussed, in each instance, the action is for trespass, assault and battery, or of a like nature, rather than under the statute, and as a consequence, the point decided is not applicable here. *Vinson* v. *Flynn, supra; Smith* v. *Detroit, etc., Assn.* (1897), 115 Mich. 340, 73 N. W. 395, 69 Am. St. 575, 39 L. R. A. 410; *Allen* v. *Keily* (1891), 17 R. I. 731, 24 Atl. 776, 33 Am. St. 905, 16 L. R. A. 798; *Walker* v. *Chanslor, supra; Mussey* v. *Scott* (1859), 32 Vt. 82.

Appellant, in justification of the entry in the case at bar, bases an argument on the provision of the lease under which appellee held, as hereinbefore quoted, to the effect that at the expiration of the term of the lease, Tapper, his representatives and assigns, might enter upon and take possession of the premises, and expel the occupant thereof, without in any manner being trespassers. Appellant sup-

ports such argument by citing *Fabry* v. *Bryan* (1875), 80 Ill. 182, which follows earlier Illinois cases, and is in turn followed by *Goshen* v. *People* (1896), 22 Colo. 270, 44 Pac. 503; and *Howe* v. *Frith* (1908), 43 Colo. 75, 95 Pac. 603, 127 Am. St. 79, 17 L. R. A. (N. S.) 672, 15 Ann. Cas. 1069. While we do not place any particular stress on the distinctions, it may be observed that in each of such cases the lease involved contained the further provision that such entry might be "with or without process of law", and that in so entering the lessor was authorized "to use such force as may be necessary in so doing", and that the nature of the action was other than as provided by the forcible entry and detainer statute. In any event we should not be inclined to follow such cases, and give them the stamp of our approval. Their soundness is doubted by 2 Tiffany, Landlord and Tenant 1505, 1506. They seem also to be in conflict with the following: *Spencer* v. *Commercial Co.* (1902), 30 Wash. 520, 71 Pac. 53; *McClelland* v. *Gaston* (1898), 18 Wash. 472, 51 Pac. 1062; *Kerr* v. *O'Keefe* (1903), 138 Cal. 415, 71 Pac. 447; *Bixby* v. *Casino Co.* (1895), 14 Misc. 346, 35 N. Y. Supp. 677.

Respecting such a provision, the following language is used in *Spencer* v. *Commercial Co.*, *supra:* "If clauses of this kind in a lease may be summarily enforced by the parties thereto by force, then the statutes of the state defining unlawful detainer, and providing a remedy by which a landlord may obtain possession may be entirely abrogated by contracts, which permit landlords to take the law into their own hands."

We find no error in the record for which the judgment should be reversed. The judgment is affirmed.

Hottel, C. J., Felt, Powers and Shea, JJ., concur; Ibach, J., not participating.

NOTE.—Reported in 107 N. E. 480. As to what is unlawful detainer see 120 Am. St. 33. As to right of one who was in peaceable possession to maintain forcible entry and detainer against another entitled to possession, who forcibly dispossessed him, see 8 L. R. A. (N. S.) 426; 32 L. R. A. (N. S.) 51. As to threats and display of force without actual force as constituting forcible entry, see 15 Ann. Cas. 804. As to right of tenant to maintain forcible entry and detainer against landlord for forcible ejectment after termination of lease, see 12 Ann. Cas. 767. As to keeping out of possession person entitled thereto, by fear of personal violence, after peaceable entry, as giving right of action, see Ann. Cas. 1912 D 875. See, also, under (1) 24 Cyc 1009, 1014; (2) 16 Cyc 1048, 1050; (3) 36 Cyc 1123; (4) 19 Cyc 1124, 1128; (5) 19 Cyc 1134, 1135; (6) 19 Cyc 1135; (7) 19 Cyc 1141, 1142.