| Damage Parcel | | Award |
|---|---|---|
| 1 | Direct | $1,092,744 |
| | Consequential | 10,700 |
| 2 | | 92,686 |
| 3 | | 83,665 |
| 4 | Land | 60,865 |
| | Improvements (bulkheading) | 2,880 |
| 5 | | 148,900 |

BORIS POLLACK, Plaintiff, *v.* MACOMBS INWOOD CORP. et al., Defendants.

Civil Court of the City of New York, Bronx County, November 30, 1966.

*Rabin & Green* for plaintiff.    *Samuel Pecker* for defendants.

ARTHUR WACHTEL, J.    This is a motion by the plaintiff, a statutory tenant, for summary judgment against the landlord, Macombs Inwood Corp. and Marshal Sherwood Louis. Plaintiff was evicted upon a warrant obtained by the landlord for nonpayment of August balance and for September and October, 1965 rent.    The petition for these months' rent was set for trial for October 25, 1965.    The plaintiff claims he paid this rent prior to the trial date.    Nevertheless, a default judgment was granted defendant for said months' rent on October 25, 1965 with stay of issuance of warrant to October 30, 1965. Defendant by letter acknowledged receipt of the amount claimed in the petition.    On the same date, October 25, 1965, City Marshal Sherwood Louis issued a requisition for a warrant which was filed October 28, 1965.    On November 3, 1965, a warrant based on the aforesaid judgment for nonpayment of August balance, September and October, 1965 rent was signed by a Judge of this court.    On the same date, November 3, the defendant obtained the issuance of another petition for the October balance and November rent.    This petition was set for trial November 12, 1965.    Plaintiff again defaulted and final judgment was signed by the court on November 12, 1965. No warrant was issued upon this judgment.    However, the warrant issued on the first proceeding based on nonpayment of August balance, September and October rent was executed by the City Marshal Louis on December 8, 1965.    The plaintiff claims that the November rent was paid prior to December 8, 1965.    The defendant claims it was paid after that date. In any event, plaintiff claims that the warrant issued in the first nonpayment proceeding should not have been executed because the rent for which the judgment on which it was based was paid.    Defendant in its answer states that by inadvertence a warrant was not obtained in the second proceeding for the November rent, but that the warrant issued in the first proceeding based on the September and October rent was executed and that the eviction on December 8 resulted from the nonpayment of November rent.    In other words, the September and October warrant was used to enforce the November judgment. This warrant was executed in plaintiff's absence.    The plaintiff further claims that the defendant Marshal did not give him the 24 hours' notice as required by law.

Plaintiff alleges in his complaint two causes of action: first that,

" Despite having received the rent for the months of September, October and November, 1965, the defendant, Macombs Inwood Corp., obtained a warrant to remove for nonpayment of rent dated November 3, 1965 and on December 8, 1965 the defendant Sherwood Louis wrongfully, unlawfully and without the knowledge of the plaintiff and in the absence of plaintiff removed the plaintiff's belongings from the aforesaid premises.

" That as a result of the aforesaid wrongful and unlawful eviction, plaintiff's property was greatly damaged, some of the same was lost or stolen and plaintiff was damaged in the sum of $1500." And for a second cause of action seeks treble damages under section 853 of the Real Property Actions and Proceedings Law, alleging,

" That the aforesaid eviction of the plaintiff by the defendant, Sherwood Louis, was with the direction, approval and aid of the defendant, Macombs Inwood Corp., its servants and employees and in furtherance of a conspiracy by the defendants to unlawfully, wrongfully, forcefully and maliciously remove the plaintiff from the premises aforesaid and deprive him of the quiet enjoyment of the same. "

Plaintiff now moves for summary judgment.

The defendants contend that plaintiff was a statutory tenant and " plaintiff was entitled solely to the remedies granted in the (New York City Rent and Rehabilitation) Law to statutory tenants " and that " On December 8, 1965, the said Law did not contain within it any remedy or right of redress by a statutory tenant against a landlord for unlawful and wrongful eviction. " (Answer of defendant, Macombs Inwood Corp.)

The attorney for the defendants relies on *Drinkhouse* v. *Parka Corp.* (3 N Y 2d 82 [May 24, 1957]); *Paterno* v. *Washington Sq. Vil. Corp.* (14 A D 2d 741, affd. 11 N Y 2d 829) and *Zolt* v. *Clydell Realty Corp.* (N. Y. L. J., Dec. 16, 1963, p. 13, col. 8 [Mr. Justice HELMAN, Sup. Ct. Bronx, Spec. Term Part I]). These cases are distinguishable.

In *Drinkhouse* v. *Parka Corp.* (*supra*) the Court of Appeals held that where a statutory tenant seeks damages solely by reason of removal from possession in violation of the rent control law, he is limited to whatever cause of action is given him by the rent control law within the language of its provisions. Thus in *Rosner* v. *Textile Binding & Trimming Co.* (300 N. Y. 319) the Commercial Rent Law (L. 1945, ch. 3, as amd.) then in effect provided for damages for removal only after the com-

mencement of proceedings based on an assertion by the landlord that he required possession for his immediate and personal use and this contention by the landlord was made in bad faith as evidenced by his failure to resume possession within 30 days; the tenant was limited to this statutory cause of action and nothing else and if he vacated before dispossess proceedings had been instituted, he was without remedy. Nor has the statutory tenant in such a case any right of action in common-law fraud (*Drinkhouse* v. *Parka Corp.,* following *David* v. *Fayman,* 298 N. Y. 669; *Rosenbluth* v. *Sackadorf,* 298 N. Y. 761). *David* and *Rosenbluth* involved residential not commercial space; those cases arose before the enactment in 1948 of section 1444-a of the Civil Practice Act, and residential tenants prior thereto had no right to sue as tenants of commercial property had under subdivision (d) of section 8 of the Commercial Rent Law. They had no statutory right of action. Nor had they any common-law action for fraud by reason of the alleged false statements made by the landlord in procuring a certificate to evict and final order of eviction on the ground that he required the premises for his own use (*David*) or for the purpose of making alterations (*Rosenbluth*).

Section 1444-a of the Civil Practice Act was in effect at the time *Drinkhouse* was decided. (It was repealed by L. 1957, ch. 755, eff. June 30, those provisions being contained in subdivision 6 of section 5 of the Emergency Housing Rent Control Law, as amended by this act, providing for actions for damages for wrongful eviction.) But as the Court of Appeals pointed out: '' The wrong charged by Drinkhouse does not consist in the procurement of an eviction certificate or dispossess order in bad faith; consequently section 1444-a of the Civil Practice Act * * * has no application. The particular wrong charged against Parka and its manager is entering Drinkhouse's apartment and locking him out. It has, of course, been declared by the former judgment that Drinkhouse had acquired the status of a statutory subtenant, and therefore could not be dispossessed except pursuant to the State Residential Rent Law. Consequently the act of the landlord in locking him out was in violation of statute, although it was not an invasion of any property right of Drinkhouse '' (3 N Y 2d 82, 88–89). Thus the sole issue before the court was, What remedy does a statutory tenant have for evicting him in violation of the rent control law other than what is given him by the specific provisions of the statute? The answer is, None. So also in *Paterno* v. *Washington Sq. Vil.*

*Corp.*, no action for unlawful eviction could lie against Grand Union by reason of alleged representations made by the sponsors of a redevelopment plan that they intended to erect a multi-story apartment building pursuant to said redevelopment plan, because subdivision 6 of section 5 of the Emergency Housing Rent Control Law restricted the remedy to a suit against the landlord and Grand Union was not the landlord.

Similarly in *Zolt* v. *Clydell Realty Corp.* (*supra*) plaintiff sued for damages, among other things, for unlawful eviction claiming that he was a statutory tenant, and that he was dispossessed by final order although he had never been served with process. Aside from the fact, as Mr. Justice HELMAN pointed out, that the Civil Court proceeding could not thus be collaterally attacked, the rule laid down in *Drinkhouse* precluded any action for damages for the alleged unlawful eviction.

Thus, in the case at bar, if this were merely an action for damages for eviction in violation of the rent control law, plaintiff would have no cause of action. But plaintiff alleges a wrongful removal and loss of his property. In his supporting affidavit, he itemizes "missing and broken" items of clothing, furnishings and furniture. It is not clear whether the Marshal is charged with causing such loss or whether it occurred in course of being taken to and placed in storage by the Department of Sanitation, and that this was a proximate consequence of the unlawful taking. In any event, enough is shown to present a case of an unlawful taking of plaintiff's property without a valid warrant. Even assuming plaintiff has no cause of action for unlawful eviction, it cannot be proposed that he has no cause of action for the unlawful taking of his property. To say that he is limited by the rent control law only to such remedies as that law prescribes and that he has no other remedies for any of his personal rights — whether in tort or contract — is not only to misinterpret *Drinkhouse*, but to misinterpret the rent law. It can hardly be asserted that the rent law deprives a statutory tenant of all his personal common-law rights. That patently would make the law unconstitutional. Suppose the ceiling fell in plaintiff's apartment, defendant's argument would logically preclude an action for personal injury. All *Drinkhouse* said was that he has no cause of action for eviction in violation of the rent control law other than what is spelled out in that law. For *Drinkhouse* specifically based its decision on Judge DESMOND's oft-quoted statement of the rule that " A statutory tenant holds over not because he has any *property right or estate in the premises,*

but the emergency laws forbid his eviction '' (*Wasservogel* v. *Meyerowitz,* 300 N. Y. 125, 132; italics added). It is to be noted that I have limited any right of action of plaintiff solely to the alleged unlawful taking of and loss of property within the allegations of the first cause of action.

The second cause of action is based on section 853 of the Real Property Actions and Proceedings Law and is dismissed upon the basis of the reasoning of *Drinkhouse* (pp. 91–92). As the court pointed out, section 535 of the Real Property Law (the precursor of Real Property Actions and Proceedings Law, § 853) '' applies only where the force employed to oust a tenant is unusual, tends to bring about a breach of peace, and the entry is with a strong hand, or by a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life and limb under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession (*Fults* v. *Munro,* 202 N. Y. 34; *Arout* v. *Azar,* 219 App. Div. 260). Mere trespass does not give rise to such an action, even when it is accompanied by 'wrenching off the lock' (*Bach* v. *New,* 23 App. Div. 548; *Schrier* v. *Shaffer,* 123 App. Div. 543). '' Endeavoring to meet this requirement of the law, paragraph 11 of plaintiff's second cause of action alleges that defendants '' wrongfully, maliciously, forcibly, and in violation of Section 535 of the New York Real Property Law, entered said apartment, changed the locks on the door thereof, threatened a breach of the peace should plaintiff attempt to re-enter said apartment, and since then have held and still hold forcible possession of said apartment, and hold and keep plaintiff out of said apartment by force or by putting him in fear of personal violence and a breach of the peace should he attempt to re-enter said apartment. '' Except for the allegation that defendants changed the locks on the door, the rest of these allegations are conclusory. The cases under section 535 of the Real Property Law, where recovery is allowed, are replete with allegations and evidence of the use of guns, clubs, threats to life, assaults and the like. Similar allegations are not found in this complaint.

With respect to the first cause of action, questions of fact are raised with respect to the issue as to the wrongful taking of specific items of personal property claimed to have been damaged, and whether defendants are chargeable with the claimed loss or damage. Accordingly, the motion is denied as to the first cause of action.

For the reasons set forth herein, the motion for summary judgment with respect to the second cause of action is disposed of to the extent that judgment is granted to defendants dismissing the second cause of action pursuant to CPLR 3212 (subds. [b] and [e]). In all other respects, the motion is denied.